CALVIN BUCKLIN *v.* BENJAMIN R. BEALS AND WILLIAM THOMAS.

*Trover. Conversion. Tender. Estoppel. Evidence.*

The defendant, Thomas, was in possession of the plaintiff's farm as tenant, and the plaintiff had purchased certain cattle to stock the farm, one-half of which were to be T.'s when paid for. T. sold several of the cattle to the defendant Beals, a cattle dealer who drove them away knowing nothing of the relations existing between the plaintiff and T. The court below charged that if the jury found that Beals did not get title to the cattle by his purchase of Thomas, the act of driving them away and keeping them as his own property constituted a conversion, and it was not necessary for the plaintiff to demand the cattle before bringing trover. *Held*, that this ruling was correct.

It would seem upon principle that in actions of trover and trespass *de bonis asportatis* when the taking is not wilful, and the property is not essentially injured, the defendant should be allowed to surrender it and pay the actual damage for the taking and detention of it into court with the costs already accrued, and in case the plaintiff refuses to accept this he must proceed at his peril.

Evidence of declarations of the plaintiff to other parties that Thomas did the trading and any trade made with him would be satisfactory to the plaintiff, does not estop the plaintiff from proving title in himself and constitutes no defense for Beals unless it appears that he had knowledge of these declarations at the time of his purchase.

The declarations of Thomas were [admissible to show the relation he sustained to the property on the question of title.

THIS was an action of trover, wherein the plaintiff claimed to recover of the defendants Beals and William Thomas, for an alleged conversion of six cows and one pair of stags. Defendant Thomas was defaulted. Beals plead the general issue. Trial by jury at the April Term, 1865, BARRETT, J. presiding.

The plaintiff's evidence tended to show that he let his farm in Halifax, on which he was living, to Thomas, for one year, beginning with March 5th, 1863, at the halves, Thomas then moving into and occupying with the plaintiff the house on said farm through the year; that the plaintiff had very little stock then on the farm, and Thomas had less,—that it was agreed that the plaintiff should furnish the money and Thomas should purchase enough with what they then had to stock the farm; that it was further agreed that the stock thus purchased should all remain the property of the plaintiff until Thomas paid one-half its value, and it was all to be kept on the farm during the year; that plaintiff furnished Thomas with money, with which he purchased and drove on to the plaintiff's farm 16 cows, 2 bulls and 4 heifers; that the plaintiff and Thomas agreed on the value of so much of the stock as the plaintiff had before this purchase, and the cost of the stock bought by Thomas, as aforesaid, was the agreed basis of value; that when Thomas paid the plaintiff for one-half the cost and agreed value of said cattle he was to own one undivided half; that Thomas never paid him for the cattle nor any part thereof; that Thomas was to have one-half the profits and increase of said cattle and bear one-half the losses; that Thomas remained on said farm during the year for which it was let to him, and managed and carried it on as tenants usually do.

The plaintiff's evidence further tended to show that the cattle sued for were driven away by the defendant Beals from his, the plaintiff's farm, on the 25th of February, 1864, without his knowledge or consent. The plaintiff, in his opening, gave no other evidence of conversion than the act of the defendant Beals, in driving said cattle away, as above stated.

The defendant Beals gave evidence tending to show that he was a cattle dealer; that on the 25th of February, 1864, he purchased of said William Thomas the cattle in controversy, and paid him therefor the sum of $300.; that he bought them to sell and make profit on; that he drove them to his home in Brattleboro and there kept

Bucklin *v.* Beals et al.

them till into the month of April, when he sold them, except one that subsequently died; that he made said purchase in good faith, supposing that Thomas had full power and authority to dispose of them; that the plaintiff had never demanded of him said cattle, or made known to him in any way, that he had any claim to, or right in them before instituting this suit; that he made said purchase at the barn on said farm where said cattle then were, in the apparent possession of Thomas.

The defendant also called sundry witnesses, whose evidence tended to show that they, at different times, while Thomas was in possession of, and carrying on said farm, went there for the purpose of purchasing cattle, butter and cheese, and other products of the farm, and the plaintiff told them in substance that Thomas did the trading, and that any trade they might make with him would be satisfactory to the plaintiff. The defendant gave other evidence tending to show that Thomas had authority from the plaintiff to sell or otherwise dispose of the cattle, but the defendant gave no evidence tending to show that he had any knowledge, before he made the purchase, of the manner of dealing between said plaintiff and Thomas and third persons, while Thomas was thus in possession of the plaintiff's farm.

In the course of the trial, the plaintiff offered to show, by sundry witnesses, conversations which said witnesses had with Thomas, while he was in possession of, and carrying on, said farm, in which Thomas told them that the plaintiff furnished the money to buy the stock; that they would remain the plaintiff's till he, Thomas, paid for one-half of them, and that he had no right to sell them without the plaintiff's consent. The plaintiff's counsel conceded that the defendant Beals was not present at, or privy to, any of these conversations, and no attempt was made to connect Beals with any knowledge of said declarations of Thomas.

The defendant Beals objected to the evidence so offered, but the court, *pro forma*, overruled the objection, and received the evidence, to which the defendant excepted.

The defendant Beals, among other things, requested the court to charge the jury:

I. 1st. If they find that the defendant purchased the cattle of Thomas in good faith, he being in possession of, and invested with,

the usual indications of ownership—this action cannot be sustained without proof of a refusal to surrender the cattle after notice of the plaintiff's title.

2. That the act of purchasing the cattle in good faith, followed up by driving them from the place where he thus purchased them, to his own premises—unless accompanied with evidence that the defendant put them to use or sold or otherwise disposed of them, before this suit was brought, does not afford sufficient evidence of a conversion.

3. That if the jury believe the testimony of witnesses as to declarations of the plaintiff, they are at liberty to find that Thomas had a right to sell these cattle to the defendant without regard to whether or not defendant was cognizant of the facts testified to by them at the time he made the purchase.

4. That the declarations of Thomas as sworn to by the plaintiff's witnesses, as to the plaintiff's having furnished the money to buy the cattle, that the cattle were to remain plaintiff's till he, Thomas, paid for one half of them, and that he had no right to sell them, should not be treated by the jury as evidence against the defendant Beals for any purpose whatsoever.

The court declined to charge the jury as requested.

After the evidence was closed, the contract and arrangement as to the farm and the stock, as the plaintiff's evidence showed them, was not controverted by the defendant, and in the argument to the jury it was conceded that under that contract and arrangement the title to the cattle sued for was in the plaintiff, and that Thomas had no right to sell them; but it was claimed,—and this was the only point argued to the jury by the defendants' counsel touching the title acquired by the defendant Beals under his purchase from Thomas, that *Thomas* was by the subsequent permission of the plaintiff authorized to sell the cattle in question; and this point was fully argued to the jury upon all the evidence, as to the manner in which Thomas conducted the business of said tenancy and managed and dealt with the property and products thereof, and as to the plaintiff's knowledge thereof and participation therein, and his sayings and acts in respect thereto.

Upon this point the court charged the jury fully and in a manner to which no exception was taken.

The court further told the jury, if Thomas from the manner in which he had been permitted by the plaintiff to conduct the business and manage and deal with the property, reasonably and in good faith supposed that he was authorized to make said sale to the defendant Beals, such sale would give Beals a valid title to the property in question.

The court further told the jury that if from the manner in which Thomas conducted said business and managed and dealt with the stock and products of said tenancy, with the knowledge of the plaintiff, persons having knowledge thereof would in good faith be reasonably led to believe that Thomas was authorized to sell the stock, a sale to such persons by Thomas would give them a valid title as against the plaintiff,—and this would be true of Beals; but as there was no evidence tending to show that he had any knowledge of the manner in which said business was conducted and said stock and products dealt with by Thomas, and as the defendant stated that he had no knowledge on the subject, up to the time of said purchase made by himself, or of anything that the plaintiff had said or done in respect thereto, the defendant Beals can not avail himself of this ground, but the validity of his title must rest on other grounds.

The court also instructed the jury that if they should find that the defendant Beals did not get title to the cattle in question by his purchase of Thomas, the act of Beals in driving them away and keeping and exercising dominion over them as his own property constituted a conversion, and no demand by the plaintiff was necessary in order to perfect a right of action.

As to the subject of the 4th request. Upon the state of the evidence at the time those witnesses gave the testimony named, the defendant Beals might have controverted the right of the plaintiff as between him and Thomas, and have claimed a different arrangement and relation from that claimed and testified to by the plaintiff. It was in this view that that testimony was admitted. When upon the argument the defendant Beals did not controvert the plaintiff's claim and evidence as to the arrangements, relations and rights of the plaintiff as between him and Thomas, that testimony became immaterial. For the purpose of precluding any improper use or effect of it by the jury, the court told the jury that the testimony as to

Thomas' sayings while he was in possession of the property under his contract and arrangement with the plaintiff bore only on the question of the relation that Thomas sustained to the property; whether that of owner as tenant in common, or that which the plaintiff claims was created by the contract and arrangement between them in respect to said stock, viz: that it was to be and remain the property of the plaintiff until Thomas should have paid for one-half of it.

So far as the parts of the charge above specified fail of complying with said requests of defendant, he excepted thereto and to the refusal of the court to charge as requested. Verdict for the plaintiff.

*Charles N. Davenport* and *George Howe*, for the defendant.

I. If the act of taking is not unlawful, a conversion, in fact, must be proved to sustain trover. 2 Green. Ev. § 642; 2 Esp. N. P. 589, *et seq.*; Buller's N. P. 44, *et seq.*

" The law seems to be settled in England, and in most of the United States, that a mere purchase of goods, in good faith from one who has no right to sell them, is not a conversion against the lawful owner, until his title is made known and resisted. 2 Green. Ev. § 642; *Parker* v. *Middlebrook*, 24 Conn. 207; *Deering* v. *Austin*, 34 Vt. 330; *Irish* v. *Cloyes et al.*, 8 Vt. 30.

There are cases in this state that give color to the charge of the court below, but with perhaps one exception, none of them support the charge. *Riford.y. Montgomery,* 7 Vt. 411; *Swift* v. *Moseley et al.*, 10 Vt. 208; *Grant* v. *King et al.*, 14 Vt. 367; *Rice* v. *Clark*, 8 Vt. 109; *Buckmaster* v. *Mower*, 21 Vt. 204; *Courtis* v. *Cane*, 32 Vt. 232.

Aside from *Grant* v. *King*, above cited, none of those cases *stretch* the law, as it really is and should be, enough to sustain the charge of the court.

II. The court improperly admitted the evidence of Thomas' declarations, " that the plaintiff furnished the money to buy the stock; that they would remain the plaintiff's till he, Thomas, paid for one half, and that he had no right to sell without the plaintiff's consent.

These declarations were purely hearsay. They did not accompany or characterize any act of Thomas' and therefore were no part of the " res gestae."· 1 Green. Ev. § § 108–109; 1 Phillip's Ev. 231, Cowen & Hill's notes, Part 1, 444, 445.

*Field & Tyler*, for the plaintiff.

The law is too well settled in this State ►to be departed from that, when one purchases personal property of another who has it in possession but is not the real owner and has no right to sell it, and takes possession, claiming title to it as owner and puts it to use, that this is an actual conversion, and makes him liable in trover to the real owner, without demand or notice, though he purchases it in good faith of one whom he supposes to be the real owner and authorized to sell it. *Riford* v. *Montgomery*, 7 Vt. 411; *Grant* v. *King et al.*, 14 Vt. 367; *Deering* v. *Austin*, 34 Vt. 330; *Thrall* v. *Lathrop*, 30 Vt. 307.

A purchase of personal property of one who has no right to sell it, where the purchaser takes delivery of it and retains the possession, claiming it under the sale, is a *conversion to use*. *Hyde* v. *Noble*, 13 N. H. 494.

By the terms of the contract between the plaintiff and Thomas, the latter could become tenant in common of the stock on the farm only by his paying the plaintiff one-half its value, which terms he never complied with. And even if he had been tenant in common, by the contract it was to remain on the farm during the year unless sold by the plaintiff's consent, and a sale of it by Thomas during the year, without the plaintiff's consent, determined whatever interest Thomas might have had in it, and rendered himself and all who claimed title under such sale liable in trover. *Swift* v. *Mosely et al.*, 10 Vt. 208; *Grant* v. *King*, before cited; *Briggs* v. *Oaks*, 26 Vt. 138; *Gray* v. *Stevens*, 28 Vt. 1. This case expressly finds that the cattle in question were sold and driven away from the plaintiff's farm "*without his knowledge or consent.*"

If Thomas had any authority as agent to sell the stock upon the farm, it was a mere *limited* or *special* authority, as shown by the evidence just referred to, and Beals was bound, at his peril, to know the extent of that authority. *White* v. *Langdon*, 30 Vt. 599; *Hurlburt* v. *Kneeland*, 32 Vt. 316.

But these sayings of the plaintiff are followed and set at rest by the admissions made by Thomas during the term and while he was in possession of and carrying on the farm, *that he had no right to sell*

*the cattle without the plaintiff's consent.* This evidence was properly admitted to show what relation Thomas sustained to the property in question.

Thomas did not make the sale within any express authority from the plaintiff, nor within his usual course of business as tenant, nor in the name or for the benefit of the plaintiff, and the plaintiff never received any benefit from it and never assented to it. Thomas did not pretend to Beals that he was selling the cattle as the plaintiff's agent, and the implication is that he sold them as his own, and the attempt to bind the plaintiff by his acts must be unsuccessful. *Cochran* v. *Richardson et al.*, 33 Vt. 172 ; *Royce* v. *Allen*, 28 Vt. 234.

The opinion of the court was delivered by

WILSON, J. The first question presented by the bill of exceptions is, whether upon the facts it was necessary to make a demand for the property before bringing the suit. No demand is necessary where the evidence is sufficient to prove a conversion of the property, and as to a conversion of the property the court instructed the jury that if they should find that the defendant, Beals, did not get a title to the cattle in question by his purchase of Thomas, the act of Beals in driving them away, and keeping and exercising dominion over them as his own property, constituted a conversion, and no demand by the plaintiff was necessary in order to perfect a right of action. We think the ruling of the county court upon this branch of the case was correct, and substantially in accordance with the rule laid down in *Riford* v. *Montgomery*, 7 Vt. 411 ; in *Grant* v. *King*, 14 Vt. 367 ; and in *Deering* v. *Austin*, 34 Vt. 330, from which we do not feel at liberty to depart. The rule that the purchase of property under such cir-cumstances, and holding possession as owner under such purchase, is of itself a conversion of the property and subjects such purchaser to an action without demand or notice, though harsh when applied to an innocent purchaser, does not in general deprive him of the right, after the suit is commenced, to surrender the property taken, in satis-faction or mitigation of damages. It would seem to be a well settled rule in the English courts in actions of trover and trespass *de bonis asportatis* that when the taking was not wilful, and the property is not materially injured, and is surrendered back to the real owner, the plaintiff will, on payment of the costs, be compelled to proceed at his

peril as to future costs. In *Hart* v. *Skinner*, 16 Vt. 138, Judge REDFIELD in delivering the opinion of the court, after reviewing the English authorities, and conceding their correctness upon principle, says, " It is not very obvious, then, why the court should not have the same discretion here, in allowing or refusing costs, which is exercised by the courts in England. There it is every day's practice to pay money into court (which had not been previously tendered) under a rule that the plaintiff accept the same and discontinue his suit or proceed at his peril as to costs. This sum paid into court is supposed always to cover the costs already accrued and a specific amount of debt or damage." The reasons why the court in that case did not allow the defence were, 1st., no rule was seasonably moved for; 2nd, the conversion was wilful; and, 3rd, the property was essentially injured. The tendency of legislation in this State has been to afford all reasonable facilities for the payment of debt or damages without costs of suit. An instance of such legislation is found in the relaxation of the common law rule as to the time of making a tender of the sum due upon contract. Yet cases frequently arise where the defendant never had an opportunity to make a tender, or for good cause omitted to make one within the time given by our statute. In such cases it might operate greatly to the prejudice of the defendant if he could not relieve himself by applying to the court and obtaining leave to pay the debt into court, together with the costs of the action up to that time. Our courts, upon equitable principles, have introduced the practice of allowing payment of the debt and costs already accrued in such cases to be made into court thereby placing the defendant, as to future costs, on the same ground as if he had seasonably made a tender of the same sum. I think the good sense of this practice is no less obvious in its application to some cases of torts, and it would seem upon principle that, in actions of trover and trespass *de bonis asportatis* when the taking is not wilful and the property is not essentially injured, the defendant should be allowed to surrender back the property and to pay the actual damage for the taking and detention of it, into court, together with the cost of the action already accrued; and in case the plaintiff refused to accept the money paid into court, he must proceed at his peril, insomuch that if at the trial he is nonsuited or if the jury shall not give

him a sum exceeding the money paid into court, he will be obliged to pay the costs of the action. The numerous actions of trover and trespass *de bonis asportatis* growing out of the sale and transfer of personal property, where the vendor had no title, and where by his false or fraudulent representations, or by some indications of owner-ship, the vendee was induced to make the purchase, where there was no intentional wrong on the part of the purchaser, and no real dam-age done by him, require that he should be relieved from the rigor of the rule applicable to cases of wilful and malicious trespass. The rule allowing such surrender of the property and payment, in the dis-cretion of the court, is founded in equity, which is "the correction of that wherein the law (by reason of its universality) is deficient." It goes upon the principle that when the defendant is ready and will-ing to pay and places within the reach of the plaintiff a sum of money equal to the actual debt or damage recoverable by law and the costs already accrued, the action ought not to be further prosecuted at the expense of the defendant. In this case it does not appear that there was such a wilful taking of the property or that it was so injured that the defendant could not have surrendered it back to the plaintiff in satisfaction or mitigation of the damages after the suit was com-menced. But the case shows that the defendant, after notice of the plaintiff's title, without offering to return the cattle, sold them, con-sequently he has no just grounds of complaint on account of the want of notice before the suit was commenced.

2. It is insisted by the defendant's counsel that the county court erred in not charging the jury in accordance with the defendant's third request. Upon the evidence referred to in that request two grounds of defence were alleged: 1st, the authority of Thomas to sell the cattle to Beals, and, 2nd, that the plaintiff, by his declara-tions and acts, was estopped from setting up title to the property in question. The defendant's testimony tended to show that sundry persons at different times, while Thomas was in possession of and carrying on the farm, went there for the purpose of purchasing cattle, butter, cheese and other products of the farm, and that the plaintiff told them in substance that Thomas did the trading, and that any trade they might make with him would be satisfactory to the plain-tiff. And the defendant's testimony also tended to show that Thomas

had authority from the plaintiff to sell or otherwise dispose of the cattle ; but the defendant gave no evidence tending to show that he had any knowledge, before he made the purchase, of the manner of dealing between the plaintiff and Thomas and third persons while Thomas was in possession of the plaintiff's farm. The defendant conceded on trial that by the arrangement as to farm and stock the title to the cattle sued for was in the plaintiff, and that under that contract and arrangement Thomas had no authority to sell them, but it was claimed by the defendant that Thomas subsequently obtained permission of the plaintiff to sell or otherwise dispose of the cattle in question. Upon the question of authority in Thomas to sell the cattle, it affirmatively appears that all the evidence as to the manner in which Thomas conducted the business as tenant, and managed and dealt with the property and its products, and as to the plaintiff's knowledge of the manner in which Thomas conducted the business, managed and dealt with the property, and as to the plaintiff's parti-cipation in the same, was fully and fairly submitted to the jury, with such instructions in relation to its effect as were entirely satisfactory to both parties. The defendant's request assumes, as matter of law, that, upon the proof of certain declarations by the plaintiff as to the authority of Thomas, the jury would be at liberty to find that Thomas had a right to sell the cattle to the defendant, without re-gard to the question whether Beals was or was not cognizant of the facts testified to by the witnesses at the time he made the purchase. This would be true if the jury found that Thomas was authorized by the plaintiff to sell the cattle, but when confined to mere declara-tions of such right in Thomas, and it appeared that Beals had no knowledge of such declarations at the time he made the purchase, it would not be true, as matter of law, that he could take advantage of them. Bearing more directly upon the latter point the court told the jury that if, from the manner in which Thomas conducted the busi-ness and managed and dealt with the stock and the products of the farm, with the knowledge of the plaintiff, persons having knowledge of the same would, in good faith, be reasonably led to believe that Thomas was authorized to sell the stock, a sale to such persons by Thomas would give them a valid title as against the plaintiff, and

that this would be true of Beals. But as there was no evidence in the case tending to show that Beals, at the time of the purchase, had any knowledge of the manner in which the business had been conducted or of the manner in which the stock and products of the farm had been dealt with by Thomas, or tending to show that Beals had knowledge of any declaration of the plaintiff as to the authority of Thomas to sell the property, it was the duty of the court to instruct and they did instruct the jury that Beals could not avail himself of such ground of defence. We think the charge in this respect was correct and as favorable for the defendant as he was entitled to. To hold that the declarations of the plaintiff, under such circumstances, operate as an estoppel in favor of a person having no knowledge of them at the time of the alleged purchase, and consequently in no way misled or affected by them, would extend the doctrine of estopel *in pais* beyond what it could be sustained by authority or upon principle.

3. It is urged by the defendant that the county court improperly admitted evidence of the declarations of Thomas in relation to the ownership of the property. The declarations or admissions of Thomas, admitted in evidence, were made by him while in possession of the farm and stock, and they relate only to the relation Thomas sustained to the property in question. Beals claimed to have derived his title from Thomas, and, in respect to the sale, Thomas and Beals stood in the relation of vendor and vendee of the property. The evidence was admissible upon the question of title as against Thomas, and, upon the same principle, it was admissible as against his vendee, Beals. The admissions came from a *privy in estate*, in contemplation of law; they came from the party himself and are not hearsay evidence. It appears that the court limited the evidence of Thomas' admissions to the legitimate purpose for which it was admissible, and for the purpose of precluding any improper use or effect of it by the jury, the court told the jury that the testimony as to Thomas' sayings while he was in possession of the property under his contract and arrangement with the plaintiff, bore only on the question of the relation that Thomas sustained to the property, whether that of owner as tenant in common, or that which the plain-

tiff claimed was created by the contract between them in respect to the stock, viz., that it was to be and remain the property of the plaintiff until Thomas should have paid for one-half of it. Under so lucid a charge we think it is not probable that the jury made any improper use of the testimony, or that they were influenced by it upon a point to which the testimony was not applicable.

The judgment is affirmed.