GILBERT & MILLER, Respondents, v. WILLIAM L. PECK AND WILLIAM T. HICKMAN, Appellants.

Kansas City Court of Appeals, February 2, 1891.

1. **Conversion**: DAMAGES : MITIGATION. In an action for conversion as the tender back of the entire lot of goods, wrongfully seized under a writ of replevin, might be held in mitigation of damages, so a restoration of a portion may likewise be considered to diminish the damages to that extent.

2. ———— : ———— : RETURN OF PROPERTY IN MITIGATION : RULE AS TO. If there was a wilful taking of the property, or a wilful refusal to surrender it on demand, or the property has suffered any injury or deterioration in value, the defendant cannot compel the plaintiff to accept the property, even in mitigation of damages, though if inadvertently taken and returned, when advised thereof, in like good condition as when taken, it seems plaintiff might be in duty bound to accept it in mitigation.

3. ———— : ———— : OFFER TO RESTORE NO MITIGATION. The mere offer to restore goods wrongfully seized without more is no defense to an action for their value. They should be kept or stored for the use of the owner and not appropriated for the use of the trespasser ; and where one inadvertently seizes goods under a writ of replevin, not covered thereby and when advised thereof refuses restoration on demand, he will be deemed to have elected to convert the goods, and no subsequent offer to restore can be considered to reduce the damages.

4. ———— : ———— : JOINT TORT-FEASORS : DIFFERENT MEASURE OF LIABILITY. Where a sheriff at the suit of one P. executed a writ of replevin and inadvertently levied on goods not covered by the writ but which P. knew were not included, they are both technically guilty of a conversion and are joint tort-feasors, jointly and severally liable for damages ; but, if upon being advised of the wrongful seizure, the sheriff tender back the goods so seized and the owner (P. consenting) accept the same, and if P. thereafter held the goods, then such wrongful holding is the act of P. alone, for which the sheriff would not be responsible, but such return would not defeat the action against the sheriff but would go only to reduce the damages.

*Appeal from the Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

VOL. 43—37

REVERSED AND REMANDED.

*Lathrop, Smith & Morrow*, for appellant Hickman.

( 1 ) Instruction, numbered 1, given for plaintiff, fixes the measure of damages as the value with the six-per-cent. interest. This instruction ignores the offer made to return the property, which certainly was proper in mitigation of damages. *Ward v. Moffet*, 38 Mo. App. 395, 401 ; *Worman v. Kramer*, 73 Pa. St. 378, 386 ; *Delano v. Curtis*, 7 Allen, 470, 475 ; *Kaley v. Shed*, 10 Metc. 317 ; *Pickering v. Trustee*, 7 T. R. 53 ; *Plevin v. Henshall*, 10 Bing. 24 ; *Hayward v. Seawood*, 1 Moore & Scott, 459 ; *Irish v. Clayes*, 8 Vt. 30 ; *Railroad v. Bank*, 32 Vt. 639 ; *Thayer v. Manley*, 8 Hun. 550 ; *Rogers v. Crombie*, 4 Greenl. ( Me.) 247 ; *Hart v. Skinner*, 16 Vt. 138 ; *Kreher v. Mason*, 20 Mo. App. 29, 23. ( 2 ) Instruction, numbered 2, given for plaintiff, is erroneous for the reason that if an offer to return all would have been good in mitigation of damages, then an offer to return a portion would, to the extent of the value of such portion, be proper in mitigation of damages. *Worman v. Kramer*, 73 Pa. St. 378, 386 ; *Earle v. Holderness*, 4 Bing. 462. ( 3 ) Instruction, numbered 3, given for plaintiff, is wrong for the reason that it declares, that, if a refusal to give up the cigars was once made, then defendants after such refusal could not mitigate the damage by tendering back the cigars, but must respond for the full value, notwithstanding a tender back. And further said instruction is wrong in declaring that a tender back could not be made after suit brought. A tender back after suit brought would go in mitigation of damages. *Ward v. Moffet*, 38 Mo. App. 395, 401. ( 4 ) The court gave instruction, numbered 1, asked by defendant. In view of said instruction and the offer to return the goods the recovery could only be nominal. And hence instruction, numbered 10, asked by defendants, should have been

given. The refusal thereof was error. *Churchill v. Welch*, 47 Wis. 39; *Worman v. Kramer*, 73 Pa. St. 378, 436; *Delano v. Curtis*, 7 Allen, 470, 475; *Bucklin v. Beals*, 38 Vt. 653; *Cook v. Loomis*, 24 Conn. 483; *Tripp v. Grouner*, 60 Ill. 476; *Stevens v. Lowe*, 2 Hill, 132; Addison on Torts [ Wood's Ed.] p. 550; Bishop on Non-Contract Law, sec. 402. ( 5 ) On the merits the finding should have been for defendant Hickman. The evidence was that on the day, or day after, he went out to the store where he took the grocery stock with Miller, the partner of plaintiff, and then and there disclaimed as to the cigars in question, and placed them at the disposal of Miller and Gilbert, and the evidence is that Miller had full liberty then and there to take them, but preferred not to make the actual removal then, until he completed some arrangement at the Exposition where he intended to take them. They were, however, put in his possession at that time.

*Dobson & Trimble*, for respondents.

1 ) The measure of damages was properly declared to be the reasonable market value of the goods at the storehouse on the twentieth of September, 1887, and not what they cost at wholesale. ( 2 ) The action of the trial court in giving instruction, numbered 1, asked by plaintiffs, and the instruction, numbered 9, asked by the defendants, and then finding for the plaintiffs, shows conclusively that the court found the fact to be that the defendants, with knowledge of plaintiff's rights, refused to deliver the goods to plaintiffs when demand was made therefor. Such a wilful detention of the goods is in all respects equivalent in law to a wilful taking in the first instance. ( 3 ) The service of the notice dated September 24, 1887, was not such a tender of the goods or offer to return them as would mitigate the damages, for the following reasons. ( 4 ) The defendant's evidence fell short of proving such an

offer to return the goods as should go in mitigation of damages. The points above stated will be found discussed and in the main sustained by the following authorities: Addison on Torts [ Wood's Ed.] p. 559, secs. 539, 541 ; Bishop on Non-Contract Law, secs. 396 to 408 ; 3 Suth. Dam., p. 530 ; *Hamner v. Wilsey*, 17 Wend. 91 ; *Norman v. Rogers*, 29 Ark. 365 ; *Savage v. Perkins*, 11 How. Pr. 17 ; *Vosberg v. Welsh*, 11 Johns. 175, 177 ; *Hart v. Skinner*, 16 Vt. 138 ; *Yale v. Saunders*, 16 Vt. 243, 245 ; *Churchill v. Welch*, 47 Wis. 39. ( 5 ) The facts and circumstances of the case contradicting the evidence of defendants that the property had been returned to, and accepted by, plaintiff Miller were so conclusive that the trial court without hesitancy found that there had been no delivery and acceptance, but that there had been a wilful refusal to deliver upon demand.   We shall not undertake to point out the facts and circumstances which forced the trial court unwillingly to its finding, but will rely upon the belief that this court will consider that finding to be conclusive as to the fact of conversion.

GILL, J.—This is an action for the alleged conversion of a stock of cigars belonging to the plaintiffs, Gilbert & Miller. At the trial in the circuit court, a jury being waived, the court found the issues for the plaintiffs, assessing the damages at $983.30, on which judgment was entered, and defendant Hickman appealed. The. facts necessary here to be related are as follows : On and prior to September 14, 1887, plaintiffs Gilbert & Miller were engaged in the wholesale cigar business at 407 Delaware street, Kansas City, and had in stock the goods here in controversy. At the same time defendant Peck had a grocery store on East Nineteenth street. On the said September 14, Peck sold and delivered the grocery stock to Gilbert, who, for the purchase price, gave to Peck a chattel mortgage on the same. Immediately after Gilbert took charge of

the Peck grocery story on East Nineteenth street, the firm of Gilbert & Miller moved the stock of cigars into the same building, and from this time on Gilbert & Miller, cigar-dealers, and Gilbert, grocer, conducted both lines of business in the one storeroom. A few days thereafter, on September 20, Peck brought a suit in replevin for the stock of groceries which he had sold to Gilbert on the ground that Gilbert had broken the conditions of the mortgage. Under the writ issued therein, defendant Hickman, as sheriff of Jackson county, went to the store on East Nineteenth street, and took possession of both the stock of groceries and the stock of cigars as well, belonging to Gilbert & Miller, and turned over the same to Peck, the then plaintiff in the replevin suit. At the time Sheriff Hickman had no notice or knowledge that there were two separate stocks in the store, but assumed that his writ covered all the goods then in the store. Gilbert was present when the goods were seized, but gave no information of this fact. The following day, however (September 21), Gilbert & Miller made their claim known to Hickman, and demanded both of Hickman and Peck a return of the cigars. As to whether or not defendants then refused to permit plaintiffs to retake the goods in controversy, is, under the evidence, in doubt. Plaintiffs' evidence tends to prove that Hickman and Peck denied plaintiffs' right to the cigars, and refused to restore plaintiffs' possession—that Peck, while admitting the cigars to be no part of the grocery stock, not covered by his mortgage nor by the writ in replevin, yet asserted an intention to hold the same until Gilbert had made him (Peck) "even on the grocery stock," etc. There was, however, on defendants' part, testimony tending to show that they consented to plaintiffs' retaking the cigars, and that when the demand was made they offered to restore plaintiffs' possession thereof. It is undisputed that on September 24, four days after the seizure of the cigars, Peck served a written notice on

Gilbert, in which he (Peck) disclaimed any intention, from the beginning, to claim the stock of cigars, and announced his entire willingness for Gilbert to take the same. This notice, however, was not served until after this suit was brought and service therein had on defendants.

I. The issue of facts here are few. It is now practically admitted that Sheriff Hickman under the replevin writ in case of Peck v. Gilbert wrongfully seized this lot of cigars. They were no part of the grocery stock covered by Peck's mortgage, belonged to Gilbert & Miller, and not to Gilbert alone, and the seizure thereof was not authorized by said replevin writ. It is fair to say, that Hickman in making the levy did so honestly—in good faith believing the writ covered all the goods in the store, and it was only the next day that the truth came to him by means of the demand made by these plaintiffs. It is equally true, however, that Peck well knew from the beginning that the cigars were no part of the grocery stock. There was then, by this wrongful seizure of plaintiffs' cigars, a technical conversion. The only question is, whether or not there is anything in the facts that will justify a mitigation of the damage, which ordinarily is to be measured by the fair and reasonable value at the time of conversion with interest thereon at six per cent. In reading the declarations of law which the court announced for its own guidance, the theory of law adopted is not altogether clear. For example, in defendants' instruction, numbered 4, the court declares, in effect, that, although defendants were in the beginning guilty of a technical conversion, yet if subsequently they offered to restore to plaintiffs the goods in controversy then the measure of damages would be the amount of depreciation in the market value of said goods, if any, from the time defendants took possession up to the time they were offered in return. But along with this the court also says, " that the written offer to permit plaintiffs to

come for and retake the cigars, dated September 24, 1887, if they did not offer to return *all* the goods, etc.; so taken * * * did not have the effect to relieve the defendants from any *portion* of their liability for the alleged trespass." When read together then we understand the trial court to declare, that while a tender back of the *entire* lot of goods, so wrongfully seized, might be held in mitigation of damages, yet the offer of a *part* thereof could not be so considered. Neither reason nor authority support this proposition. No reason is suggested, if the return of *all* the goods may be considered in mitigating the damages for a conversion, why the restoring a *portion* may not likewise be regarded to diminish the damages to that extent. *Earle v. Holderness*, 13 Eng. C. L. 589; *Worman v. Kramer*, 73 Pa. St. 386. Why then did the trial judge refuse to consider any return or offer to return the cigars in mitigation of damages? Was it that he found no such restoration, or was it because the offer to restore did not include *all* the goods wrongfully seized. If the court was prompted to so find from the last consideration, then it was error.

II. It seems to be the contention of defendants' counsel that, when the written offer to permit plaintiffs to retake the goods was made on September 24 (which was after the institution of this suit), it was plaintiffs' duty to accept them—that the service of that notice was equivalent in law to a return and acceptance—in which event, it is said, the plaintiffs' recovery should be for mere nominal damages. This proposition is true only in a qualified sense. If defendant Hickman inadvertently and by mistake seized these cigars, and, then when advised on the succeeding day of the wrong committed, he offered to return the same in the like good order and condition as when he took them, then it seems plaintiffs might have been in duty bound to accept the same in mitigation of damages. Such offer and acceptance would not be a complete bar to the

action, but would only go to lessen the measure of damages. However, if before this offer to restore the goods, the plaintiffs had advised the defendants of their title thereto and had demanded possession which was refused, then from that time defendants were wilful trespassers and were guilty of a deliberate conversion, and no subsequent offer to return would avail anything, even in mitigation of damages. 3 Suth. Dam. 538; *Pickering v. Trustee*, 77 T. R. 53; 1 Addison on Torts, sec. 541; *Hart v. Skinner*, 16 Vt. 138; *Bucklin v. Beals*, 38 Vt. 653; *Norman v. Rogers*, 29 Ark. 53.

The rule in this class of cases is said to be: "If there was a wilful taking of the property, or a wilful refusal to surrender it on demand, or the property have suffered any injury or deterioration in value, the defendant cannot compel the plaintiff to accept the property, even in mitigation of damages." Note in case of *Yale v. Saunders*, 16 Vt. 243.

III. And, further, it may be well to say: Even though defendants, immediately on plaintiffs' demand for restoration of the goods, did offer to permit the plaintiffs to take the goods, and though plaintiffs refused, yet, if subsequently defendants disposed of said cigars, or used the same as their own property, then such offer to return is no defense. The mere offer to restore goods illegally and wrongfully seized, without more, is no defense to an action by the wronged party for their value. They should be kept, or stored, for the use of the owner and not appropriated to the use of the trespasser. The reason permitting redelivery of goods to go in mitigation of damages is that the party has been restored to his former condition; that the injury has been in part repaired. *Easton v. Woods*, 1 Mo. 506.

If, after sheriff Hickman became aware of his technical invasion of plaintiffs' rights by seizing their property which was not included in the writ of replevin, he had then immediately, on plaintiffs' demand, tendered

back the goods, and on their refusal to accept had continuously kept or preserved the same for plaintiffs' use, then such offer back with such continued readiness to restore the property would, under the rule announced in *Ward v. Moffet*, 38 Mo. App. 395, constitute proper matter in mitigation of damages. But, as already said, if when defendant Hickman was informed of this wrongful seizure, and plaintiffs' demand for the return of the goods was made and restoration was then refused, then defendant will be deemed to have elected to convert, and no subsequent offer to restore the goods can be considered to reduce the damages.

IV. Defendants Hickman and Peck were, in this illegal seizure, joint tort-feasors, and were jointly and severally liable for the consequent damages. Each is bound for the acts of the other. This, of course, is subject to the qualification that, if defendant Hickman went with the plaintiff Miller, as he testifies, and tendered back the cigars, and if Miller then and there (Peck consenting), accepted the same, and if Peck thereafter withheld the goods from plaintiffs, then such wrongful withholding was the act alone of defendant Peck, and for which Hickman would not be responsible. Hence, instruction, numbered 9, given at the instance of defendants, was correct, *except*, however, it is erroneously declared therein that in that event the finding must be for defendant Hickman. As already explained, such return by Hickman would not defeat the action against him, but would go only to reduce the damages. In any phase of this case there must be a judgment against both of these defendants. The only question is the *quantum* of damages to be awarded.

We have here given our views on the legal questions involved in this controversy. In some respects these views are consistent with those declared by the trial court, in other respects they are not in harmony therewith. The judgment, therefore, will be reversed and the cause remanded for a new trial. All concur.