MILDRED PANTZ, RESPONDENT, v. JOSEPH T. NELSON, APPELLANT.—
135 S. W. (2d) 397.

Kansas City Court of Appeals. December 4, 1939.

*Watson, Ess, Groner, Barnett & Whittaker* for appellant.

*Cornelius Roach,* for respondent.

SPERRY, J.—Mildred Pantz, plaintiff in the circuit court, sued defendant, Joseph T. Nelson, for the value of certain of her personal property alleged to have been converted by defendant to his own use. Plaintiff obtained judgment and defendant appeals. We will continue to refer to the parties as plaintiff and defendant.

Plaintiff is the daughter of C. C. Nelson, deceased. Defendant is the brother of C. C. Nelson. Deceased owned and operated the Carlton Hotel in Kansas City, and, for value received, executed and delivered to defendant a note and mortgage covering said hotel, which mortgage was foreclosed on December 2, 1937, and defendant became the purchaser at foreclosure sale. Deceased had also, on October 7, 1935, made, executed and delivered to defendant a bill of sale whereby he conveyed to defendant all furniture, fixtures, dishes, etc., located in said hotel, except such as belonged to guests.

Immediately after the foreclosure sale, defendant took possession of the hotel, including furnishings, and placed Mrs. Holmes in charge as manager. On or about December 18, 1937, defendant caused to be placed in storage a dining room set, a clock, three mirrors, a cabinet, a chair and two trunks, same being no part of the property herein sued for and being the property mentioned in defendant's exhibit 15, hereafter mentioned, and caused the receipt therefor to be sent to plaintiff who was in New York. Plaintiff testified that she, upon receiving this storage receipt, wrote Mrs. Holmes regarding the belongings claimed by her in this suit, and that Mrs. Holmes wrote her a letter, dated January 19, 1938, which was introduced in evidence, and which is, in words and figures as follows:
"My dear Mildred:

"Just have your letter regarding your things left here on Dec. 18th, Mr. J. T. Nelson ordered what he calls yours sent to the A. B. C. Storage Co. The warehouse receipt was sent to you at the Hotel Muehlebach as soon as received here. After holding it for two weeks they returned it to the sender, who sent it back to me. I called your attorney, who told me to send it to you there. The only thing I can advise you is to write to Mr. J. T. and let him answer all questions."

Plaintiff further testified that she then wrote defendant regarding her other belongings, the subject of this suit, and that she received a letter from defendant dated February 16, 1938, reading, in part, as follows:

"Just a month and fifteen days before he died I had a long talk with him at the Carlton. He had given me a mortgage on all the furniture and fixtures of every kind and description—in checking this over he said there was a bed included that was at some furniture store (I am told now that this was sold and the proceeds sent to you). In checking over this furniture he pointed out and made a list of all he said belonged to you and this was exactly what was sent to storage. The dining room set he said belonged to Dick and I asked Dick to get this out which he did. Was advised by an attorney to do this and possibly avoid any damage by fire or water. *The remaining furniture in the Carlton belongs to me* and I will be lucky indeed if I get fifty cents on the dollar of the amount involved." (Italics ours.)

Plaintiff testified that she had given Mrs. Holmes a complete list of her furniture during the summer of 1937; that she arrived in Kansas City about February 22nd, called on Mrs. Holmes, at the hotel, and requested delivery of her furniture; that Mrs. Holmes told her "that my uncle had given instructions not to let me have anything in the Carlton."

The following instrument, which contains a list of goods sued for herein, was identified as having been signed by deceased, and was introduced in evidence.

"EXHIBIT 8.

"July 27th, 1935.

"The following furniture in Carlton Hotel belongs to Mildred Nelson de Pantz and can be had any time called for:

"1  Great Grandmother bed.
"1  Hallchair—straight-bot from Keithes.
"1  Love seat—blue Chinese velvet with linen cover (good repair).
"1  big davenport—black silk worn—(linen cover).
"1  small black Chinese table low (before davenport).
"1  French inlaid table—dull finish.
"1  Great Grandmother chair red cover.
"1  Great Grandfather chair green cover.
"1  big Oriental rug real—pad for under rug.
"1  long Chinese table.
"1  telephone table.
"1  purple big chair.
"1  console table—French (in basement)
"1  long floor mirror.
"1  green bedroom set (bed, highboy or chest of drawers, dressing table, floor length mirror, desk, desk chair and one stook with broken seat).
"1  black teak wood tea table (Mrs. Holmes' room).
"1  matching black teakwood chair.

"(Signed)      C. C. Nelson.

"Also
"1   big Oriental rug dark red American made.
"2   small rugs to go with (those now in Dick's apartment).
"1   floor lamp—expensive French shade.
"3   old French mirrors worth $800—2 wall brackets.
"1   big chiming clock in dining room.
"1   red boul clock, probably in basement.
"1   French blue clock in Mrs. Holmes' room.
"1   small Chinese chest in parlor.
"1   long Chinese table.
"1   telephone table.
"1   big purple chair.
    "Boxes books in basement Carlton.
    "Barrels of China."

                    " (Signed)     C. C. Nelson."

Plaintiff further testified that during her conference with Mrs. Holmes the latter called defendant by telephone at his home in Mission, Texas; that immediately after Mrs. Holmes finished talking to defendant, plaintiff called him from the Carlton and said:

"Uncle Joe, I don't want there to be any misunderstanding about this. You know this furniture, there is a great deal of this furniture that belongs to me. I have a signed list of my father, so there is no question about it; that it belongs to me, so I would like to take it out, as I have taken an unfurnished apartment, and I need it. He said, 'No, you can't have any of it. I am going to take all of that furniture.' "

She further testified regarding a second telephone conversation as follows:

"A. Yes, sir, just before I went to the apartment, I called him again. I said, 'Can't I just have a bed to sleep in? There is a bed I know of that is not being used, in the Carlton Hotel, in the basement, my great grandmother's big bed, can't we have that? It would help me out very much if we had that.' He said, 'No' again, 'that I could not.' I made two phone calls to him, to see whether 'he would send out my goods. I wrote a long sixteen-page letter, explaining everything to him.

"Q. When did you write that letter? A. In between the two telephone calls, and I told him I didn't want to do anything, but I would be forced to do something if he did not answer."

It was also in evidence that plaintiff's attorney, on February 26, 1938, wrote defendant a letter requesting delivery of the property and attached thereto a copy of Exhibit 8, *supra*. Defendant failed to answer said letter. Plaintiff stated that the only response she had to her two telephone calls and to the letters which she herself wrote, was a postal card wherein defendant said "I will be up to see you."

This suit was filed on March 16, 1938. On March 24th defendant

entered his appearance, filed answer, and tendered delivery of the property, mentioned in Exhibit 8, in a letter written by his attorneys, which letter was offered in evidence by defendant, but was excluded upon objection. This letter of defendant will be referred to herein as Exhibit 17. Error is assigned because of this ruling of the court.

Plaintiff identified the articles mentioned in her Exhibit 8, asserted her ownership of same, and testified as to their value. She also offered the testimony of other witnesses which tended to corroborate her own testimony as to ownership and value. Defendant offered no evidence which tended to contradict this line of testimony. However, defendant's cross-examination of witnesses tended to question plaintiff's ownership and the alleged value of the property. No point is made here that the verdict reflects an excessive value of the property.

Defendant testified in his own behalf and produced a written instrument which was offered in evidence as his Exhibit 15. The instrument is in words and figures as follows:

"11/1st 1936

"List of all the furniture in Carlton belonging to Dick and Mildred.

"One Dining Room Set—Chairs—table and sideboard.

"One China Cabinet.

"One grandfather's clock, now in dining room.

"3 mirrors—(old)

"(Signed)    C. C. Nelson."

Upon objection this exhibit was excluded from evidence and the ruling of the court in that connection is assigned as error.

Defendant testified to the effect that plaintiff called him twice during the latter part of February, 1938, and told him that she had a list of furniture signed by her father and "wanted it;" that he first saw the list mentioned when he received a copy from plaintiff's attorney, which, on cross-examination, he finally admitted, was on or about February 28, 1938; that he came to Kansas City about March 20, 1938, after suit was filed, located and identified the property mentioned in Exhibit 8, which was in the Carlton, and tendered same to plaintiff in a letter dated March 24th.

During the examination of defendant the following occurred:

"Q.  Now, did you ever leave any instructions with Mrs. Holmes, not to permit Mildred (Pantz) to take any furniture out of the Carlton Hotel?

"A.  After he furnished us with the list that I had, (Exhibit 15) that belonged to her, I told her not to let anybody take any out."

Defendant's testimony was to the effect that the above instructions were given after the property was stored for plaintiff; that he anticipated plaintiff would claim furniture other than that listed on Exhibit 15; that he wrote plaintiff the above mentioned letter dated February 16, 1938, telling her that the remainder of the furniture in the Carlton was his, after he had received a letter from plaintiff (evidently writ-

ten from New York) regarding the remainder of her furniture in the Carlton; that plaintiff's letter suggested to him the necessity for advising plaintiff that the remaining furniture belonged to him; that he so meant it at the time he wrote it.

Mrs. Holmes was a witness on behalf of defendant and testified that defendant took possession of the hotel immediately after foreclosure sale, December 2, 1937, and placed her in charge for him; that in 1934 deceased had brought a large amount of household goods and furniture (apparently the property in suit) and stored same in the Carlton; that upon instructions of defendant she caused to be stored, and sent plaintiff the storage receipt, the articles listed on Exhibit 15; that during the latter part of February, 1938, plaintiff appeared at the hotel and demanded her furniture and was told by witness that she would allow nothing to leave the house except upon orders of defendant; that she there and then called defendant and told him plaintiff was there demanding her furniture, and that plaintiff also talked to defendant; that she had received a list of furniture claimed by plaintiff in this suit long prior to the foreclosure sale; that about the time she stored the things for plaintiff she received instructions from defendant not to permit anything else to go out of the hotel.

The first error assigned is:

"The Court erred in refusing to admit in evidence Exhibit 15 because (a) there was no evidence offered for the purpose of showing that any demand was made for the return of plaintiff's property until after December 2, 1937, but (b) there was evidence offered for the purpose of showing several demands in the year 1938, together with assertions by defendant that he owed the property and (c) the jury was not required to find that any particular demand was refused (Instruction 1, pp. 299, 300; Instruction D, p. 301), and (d) there was evidence that plaintiff wrote a letter from New York to defendant in Texas claiming that she had certain unspecified furniture in the hotel and (e) that defendant, in reply thereto, wrote a letter to plaintiff stating that he had a list signed by her father showing which property belonged to her, that he had stored the same for her in a storage house, and that the remaining property belonged to him. The written list referred to in said letter was Exhibit 15, whereas the property claimed by plaintiff consisted of a great deal of property not on said list (see amended petition, 6, 7). (f) Plaintiff never admitted that she received all of the property listed on Exhibit 15, and (g) the jury was not required to believe defendant's oral evidence that he had stored all of the property listed on Exhibit 15 for plaintiff.

"Therefore, Exhibit 15 was competent evidence tending to show (1) that defendant acted in good faith when he claimed all of the furniture in the hotel, (2) that defendant did not know of the existence of any other furniture belonging to plaintiff and contained in the hotel when he stated that the remaining furniture was his, and

(3) that said statement in said letter was not an intentional denial of the title of plaintiff to any of the property sued for.''

We cannot agree with defendant's contention numbered 2 in the preceding paragraph, because defendant admitted that he talked with plaintiff by telephone, during the latter part of February, concerning furniture which she claimed. This was long after the storage receipt had been sent to her, and after he had written plaintiff the letter dated February 16th, hereinbefore quoted, which letter was in evidence as Exhibit 7. The language of this letter, as well as the testimony of defendant when on the witness stand, indicated clearly that he knew that the furniture claimed by plaintiff in this suit, and the subject of the telephone conversation, was not the furniture sent to storage, which latter, he said, was all that belonged to plaintiff. He testified that when the furniture described in Exhibit 15 was stored, he then anticipated that plaintiff would claim other furniture and instructed Mrs. Holmes not to permit removal of other furniture by anyone. He took a clock, a part of the property sued for, to Texas, and still retained it there at the time of trial. It follows that his denial of plaintiff's title was definite and intentional, made with full knowledge of the fact that plaintiff *claimed* title to certain furniture not included in Exhibit 15. This he saw fit to do without the formality of investigating the validity of plaintiff's claim, and without requesting time for that purpose. He continued to assume this position after having received a photostatic copy of plaintiff's Exhibit 8 on February 28th. He did not alter his position prior to the filing of suit on March 16th, nor until March 24th when he filed answer and made his tender. In view of his own testimony and admission he was not laboring under any illusion as to the fact that plaintiff claimed property other than the property which he had long before placed in storage for her. Nor did he make any such defense in this action. Throughout cross-examination of witnesses and in his own testimony he at no time admitted plaintiff's ownership of the property sued for. The record discloses that he requested no instruction on the theory that he was honestly mistaken as to the true ownership of the property when he refused to deliver same to plaintiff on demand.

It is true, as contended by defendant, that in order to make out a case of conversion upon proof of demand and refusal of surrender of property, the parties must, at the time such demand and refusal occurs, be in close enough proximity to each other and to the property so that defendant can deliver and plaintiff can receive said property. [Terwilliger v. Browning King & Co., 185 N. Y. Sup. 17, l. c. 22; Nelen v. Cowell, 123 Atl. (R. I.) 897, l. c. 898; 26 R. C. L. 1115, par. 25.] Such rule of law might be though to apply to the refusal to deliver the property, as evidenced in the letter of February 16, 1938, when defendant was in Texas, plaintiff in New York, and the property was in Kansas City; but it is also true, as stated by de-

fendant, that if defendant, *unqualifiedly* claimed title to the property in defiance of plaintiff's claimed title, he thereby waived the fact that said demand was made when neither party was near the property. [26 R. C. L. 1117, par. 28.] Furthermore, a demand was made by plaintiff, by telephone, when she was in the Carlton where the property was stored, at a time when defendant's agent in charge was there present. At that time defendant denied plaintiff's title and refused to deliver the property. We think defendant's refusal to deliver must be held to have been unqualified and in defiance of title claimed by plaintiff. [Banque de France v. Equitable Tr. Co., 33 Fed. (2d) 202, l. c. 208.]

Defendant contends that when demand was made for delivery of the property which originally came into his possession rightfully, it was no conversion to refuse to deliver the property until he had had a reasonable time to investigate concerning the true ownership. This principle of law is declared in Banque de France v. Equitable Trust Co., *supra,* and in Gilbert & Miller v. Peck, 43 Mo. App. 577; but it does not apply to a case where defendant admits knowledge of the nature of plaintiff's claim, as here, and unqualifiedly claims title.

Nor can title be proved by hearsay evidence. [22 C. J. 272.] The Supreme Court said, in Criddle's Administrator v. Criddle, 21 Mo. 522, l. c. 523, 524:

"Where a person is in possession of property, whether real or personal, and nothing more appears, the law presumes that he is the owner of it. He cannot, whilst thus possessed, make a title for himself by his own declaration or assertions. But his declarations against the presumption which the law makes in his favor, may be given in evidence to disprove the presumption, and to show that he has a less or no interest in the property of which he is possessed. This, we understand to be the rule on the subject of declarations made by one apparently the owner of property, and so it has been repeatedly declared by this court. Now this rule would be of little or no value, and, indeed, would be dangerous, if, when declarations against a party's interest are offered in evidence, it should be allowed him to bring in declarations made on other occasions making title in himself, on the pretence of disproving those made against his interest."

That court also said, in Ragsdale v. Achuff, 27 S. W. (2d) 6, l. c. 12:

"Concededly, these statement were made long after the contracts between Ed R. Achuff and the plaintiffs were entered into, and during the time he held the 15 shares of stock and the real estate in question subject to the rights of the plaintiffs under said contracts. In making these statements, he assumed the right to dispose of said shares of stock and said real estate and all of his own property as he saw fit, and without limitation. Thus, it appears that these statements were not against his interests, but were self-serving and against the interests of the plaintiffs; and, having been made in the presence

of the plaintiffs, these statements were clearly inadmissible, and cannot now be considered as competent evidence. [22 C. J. 235, par. 218; Weller v. Collier (Mo.), 199 S. W. 974, and cases cited.]"

The record discloses that defendant did not admit in his answer, or in his testimony when on the witness stand, or at any other time, that the property belonged to plaintiff; that he never, at any time, claimed to be uncertain or ignorant as to any facts regarding title, but that he at all times stood on his bill of sale from deceased; that he never asked for time during which to investigate ownership; and that he did not seek any instruction on the theory of mistake or lack of information. Exhibit 15 was executed by deceased November 1, 1936, long after his execution of Exhibit 8 on July 27, 1935, and at a time when he had possession and control of the property in controversy, subject to the rights of plaintiff. The facts in that regard are very similar to those in Ragsdale v. Achuff, *supra.* The trial court committed no error in excluding it from evidence.

Defendant also assigns error because his Exhibit 17 was excluded from evidence. This exhibit was a letter written by defendant's counsel to plaintiff's counsel, wherein defendant tendered delivery of the property which is the subject of this controversy. The letter was dated March 24, 1938, eight days after institution of suit. It is contended by defendant that proof of tender of delivery was permissible in mitigation of damages, on the theory that the original possession by the defendant was lawful, that the conversion was not wilful, that the property still remained in his possession in its original condition, and that he had not, in fact, appropriated the same to his own use.

The general rule is that the measure of damages for conversion of property is the market value at the time of conversion. [Roll v. Fid. Nat. Bk. & Tr. Co., 115 S. W. (2d) 148, l. c. 151.] However, there is authority for the proposition that defendant may, under certain conditions, show a tender of the property in mitigation of damages. Defendant claims this case falls within the exception to the general rule. Such exception is stated in the following language in Ward v. Moffett, 38 Mo. App. 395, l. c. 401.

"In actions of trover, if the owner regains his property, the measure of damages is what he has lost by the temporary conversion, and no more. [Greenfield v. Leavitt (Mass.), 1 Pick. 1.] And evidence that the defendant had relinquished all claim to the property, that he never removed it from the place where it originally was, and never in point of fact converted it to his own use, has been held admissible in mitigation of damages. [Denalo v. Curtis (Mass.), 7 Allen 471, 475.] The rule seems to be that, if defendant came lawfully into the possession of the goods, and *his refusal to surrender them was qualified, or if the conversion was technical only, or without wilful wrong on his part, and* the property remained entirely *in statu quo,* the de-

fendant may compel the plaintiff to accept it in mitigation of damages. [Pickering v. Trustee, 7 T. R. 53; Hayward v. Seward, 1 Moore & Sc. 459.] Where such a state of facts exists, it is plain that evidence that the defendant has tendered the property to the plaintiff is admissible in mitigation of damages; and no reason is perceived why, for the purpose of showing good faith·and mitigating the damages, the defendant should not, in such a case, be permitted to show in evidence his continued readiness to restore the property to the plaintiff. On this ground we think this evidence was properly admitted.'' (Italics ours.)

That case is to be distinguished from the one at bar. There defendant was receiver of a *building* and never did claim plaintiff's *personal* property stored therein. Complaint was made by plaintiff because of the admission in evidence of an order of court, made subsequent to institution of the suit. The court held that its admission was not error because defendant, having offered evidence of tender of delivery *before suit was filed,* was entitled to show his *continued readiness* to deliver the property. In the case at bar the first and only offer of delivery, although repeated demands were made, was made *after suit was instituted.* ·Furthermore, we think defendant,·by his own evidence, not only failed to bring himself within the rule of the quoted opinion which states the exception to the general rule, but definitely placed himself outside of its operation. His own admitted words, writings, and actions established that his refusal to surrender the property on demand made prior to suit, was *unqualified*: that he claimed the whole of the personal property within the building, *wilfully,* in utter disregard of and in *defiance of plaintiff's claims; that he had knowledge of her claim* but did not care to investigate its justice; that he claimed title through a bill of sale and meant to hold the property, regardless of what claim plaintiff might make; that he contemplated selling it in order to obtain "fifty cents on the dollar" of his investment; and that he did, in fact, take part of it to Texas, where it still remains.

Defendant also relies on the following language quoted from Gilbert & Miller v. Peck, 43 Mo. App. 577, l. c. 583, et seq.:

''. . . If defendant Hickman inadvertently and by mistake seized these cigars, and, then when advised on the succeeding day of the· wrong committed, he offered to return the same in the like good order and condition as when he took them, then it seems plaintiffs might have been in duty bound to accept the same in *mitigation of* damages. Such offer and acceptance would not be a complete bar to the action, but would only go to lessen the measure of damages. *However, if before this offer to restore the goods, the plaintiffs had advised the defendants of their title thereto and had demanded possession which was refused, then from that time defendants were wilful trespassers and were guilty of a deliberate conversion, and no sub-*

*sequent offer to return would avail anything even in mitigation of damages.* [3 Suth. Dam. 538; Pickering v. Trustee, 77 T. R. 53; 1 Addison on Torts, sec. 541; Hart v. Skinner, 16 Vt. 138; Bucklin v. Beals, 38 Vt. 653; Norman v. Rogers, 29 Ark. 53.]

"The rule in this class of cases is said to be: 'If there was a wilful taking of the property, or a wilful refusal to surrender it on demand, or the property have suffered any injury or deterioration in value, the defendant cannot compel the plaintiff to accept the property, even in mitigation of damages.' Note in case of Yale v. Saunders, 16 Vt. 243.

". . . The mere offer to restore goods illegally and wrongfully seized, without more, is no defense to an action by the wronged party for their value. They should be kept, or stored, for the use of the owner and not appropriated to the use of the trespasser. The reason permitting redelivery of goods to go in mitigation of damages is that the party has been restored to his former condition; that the injury has been in part repaired. [Easton v. Woods, 1 Mo. 506.]

"If, after sheriff Hickman became aware of his technical invasion of plaintiffs' rights by seizing their property which was not included in the writ of replevin, he had then immediately, on plaintiff's demand, tendered back the goods, and on their refusal to accept had continuously kept or preserved the same for plaintiffs' use, then such offer back with such continued readiness to restore the property would, under the rule announced in Ward v. Moffett, 38 Mo. App. 395, constitute proper matter in mitigation of damages. *But, as already said, if when defendant Hickman was informed of this wrongful seizure, and plaintiffs' demand for the return of the goods was made and restoration was then refused, then defendant will be deemed to have elected to convert, and no subsequent offer to restore the goods can be considered to reduce the damages.*" (Italics ours.)

We think the portion of above language which we have italicized lays down the rule applicable to this case. Here defendant was lawfully in possession of the property but was "advised" of plaintiff's title, whereupon he refused delivery of the goods, not because of inability to deliver, nor because he desired time to investigate, but simply because he claimed adversely and in defiance of plaintiff's claim. By that refusal he must be held to have elected to convert. The offer to restore, coming, as it did, more than a month after his definite refusal to deliver, more than two weeks after he had received a photostatic copy of plaintiff's bill of sale, and more than a week after suit was filed, came too late for any purpose in this case.

Defendant says that plaintiff ". . . upon her own evidence, persists, by means of this action, in an attempt to sell them to him against his will." [Ward v. Moffett, *supra*.] On the contrary it would seem that defendant, by his own actions, elected to buy the goods, and that his renunciation of the sale came too late. The

reason back of the principle of restoration in mitigation of damages is an equitable one; but where, as here, plaintiff was compelled to, and did, buy other furniture because of defendant's unlawful refusal to deliver the property which was lawfully hers, the equitableness of such rule is not apparent.

It was not error to exclude from evidence defendant's Exhibit 17. The judgment is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.