## CHARLES A. BYRD v. WEBB CITY BANK et al.; WEBB CITY BANK, Appellant.

Division One, July 11, 1912.

1. ESCROW AGREEMENT: Impossible Judgment: Lease: Sale: Bonus: Verdict for Lessee. Where the lessee of land agreed to pay the lessor $10,000 for an extension of the lease, if he sold it for $30,000, and the extended lease was placed in escrow in a bank to be delivered on the payment of the $10,000 to the bank for the lessor, and the lease was sold for $30,000 and the whole placed in the bank, and the bank issued a draft for the $10,000 in favor of the lessee, which was never delivered, and the lessor sues both the lessee and the bank, and the lessee at the trial by his answer or otherwise, sets up no claim to the $10,000, a verdict in favor of the lessee does not make impossible a verdict and judgment in favor of the lessor against the bank.

2. ————: In Parol: Fully Performed: Statute of Frauds. Although the bank expressly refused to accept in writing an agreement to receive on deposit a mining lease which the lessee believed he could sell for $30,000 if it were extended for a short time and for which extension he agreed to pay the lessor $10,000 if he did sell it for that sum, and to deliver the lease to the purchaser on the payment to it of that sum and to pay to the lessor $10,000 of the amount, yet if it made that agreement by parol, and accepted the trust, and all the parties acted upon it, and the lease, contracts and money were received by the bank, it cannot refuse to pay to the lessor the $10,000, especially where the lessee disclaims any interest in the money.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

H. W. Currey, McReynolds & Halliburton, George V. Farris and W. J. Owen for appellant.

(1) Davis being the immediate actor, and the defendant bank's liability and plaintiff's right of action, if any, against it, being dependent upon the obligations, conducts, contracts, and agreements of Davis with plaintiff; and, the issues between Davis and Byrd, as to such obligations, conducts, contracts and agreements, having been found in favor of Davis, and against plaintiff, such finding and judgment bars the plaintiff's right to any judgment against the defendant bank. McGinnis v. Railroad, 200 Mo. 359; Storage Co. v. Transit Co., 120 Mo. App. 410; Taylor v. Sartorious, 130 Mo. App. 39; Railroad v. Railroad, 78 Mo. App. 245; Doremus v. Root, 23 Wash. 719; Mining Co. v. Independence, 158 Fed. 63; Crow v. Bowlby, 68 Ill. 23; Sipes v. Railroad, 102 Pac. 1060; Morris v. Improvement Co., 102 Pac. 402; McKenzie v. Railroad, 28 Md. 161; In re Harrington, 81 Pac. 546; Stevick v. Railroad, 81 Pac. 1001; McCoy v. Railroad, 40 So. 106; Hill v. Bain, 15 R. I. 75; Hayes v. Tel. Co., 218 Ill. 414; City v. Fleming, 160 Ind. 597. (2) The contract between Davis and the plaintiff by which it is charged, in the petition, Davis promised to pay the plaintiff $10,000 for his lease, created the relation of debtor and creditor between Davis and the plaintiff; and the finding of the jury in Davis's favor completely destroyed such relation; and, the relation of debtor and creditor being an all-essential fact from which the liability of the bank, if any, arose, and having been found for Davis, conclusively bars any judgment against the bank under any and all of the foregoing authorities. The estoppel arising from the

verdict of the jury and judgment thereon, in favor of Davis, is as complete and effective in the bank's favor as it is as to Davis. McGinnis v. Railroad, 200 Mo. 347; Mining Co. v. Independence, 158 Fed. 63; Crow v. Bowlby, 68 Ill. 23. (3) The verdict for Davis and against the plaintiff is the finding of every fact in his favor, and negatives—conclusively—every allegation in the petition going to make up any cause of action, upon any theory, which plaintiff had against Davis. Realty Co. v. Spencer, 95 Pac. 757; Mitchell v. Tell City, 83 N. E. 735; Plyler v. Cement Co., 92 Pac. 56; Bradley v. Ins. Co., 147 Mo. 639; Martin v. Hoffman, 93 Pac. 625. (4) The petition fails to state facts sufficient to constitute any cause of action against defendant bank. If the plaintiff relies upon a novation, the petition fails to state facts sufficient to constitute a novation, because (a) it fails to charge any agreement between the Webb City Bank and Davis, whereby the Webb City Bank agreed to pay a debt, which it, the Webb City Bank, owed to Davis, to the plaintiff Byrd; (b) it fails to state facts showing or indicating that the plaintiff's debtor, Davis, was released from all obligation to pay the $10,000 by virtue of any agreement between the three parties, namely, Davis, Byrd and the bank; (c) the joinder of Davis as party defendant, and praying judgment against him, is conclusive against plaintiff recovering on the theory of a novation. Cox v. Sloan, 158 Mo. 411; Lee v. Porter, 18 Mo. App. 377; Realty Co. v. Assurance Co., 94 Mo. App. 356; Adams v. Moody, 91 Mo. App. 41. (5) The plaintiff, having pleaded that the order was not accepted in writing, but that defendant bank verbally agreed to accept the same, the petition shows, on its face, that it states no cause of action. Bank v. Comm. Co., 84 Mo. App. 421; Mer. Co. v. Adkinson, 52 So. 419. (6) The petition does not charge the bank with having accepted the order, but charges that the bank agreed verbally

that it would accept the order upon the happening of a certain contingency. Such verbal agreement is within the Statute of Frauds, and void, because not in writing. Flato v. Mulhall, 72 Mo. 522; Brinkman v. Hunter, 73 Mo. 172; Nichols v. Bank, 55 Mo. App. 81; Wood v. Kansas City, 162 Mo. 303; Bank v. Gordon, 45 Mo. App. 293; Price v. Railroad, 40 Mo. App. 189; Gill v. Reed, 55 Mo. App. 246; Clement v. Gill, 59 Mo. App. 482; Muth v. Trust Co., 88 Mo. App. 596; Bank v. Bank, 30 Mo. App. 271.

*Frank L. Forlow* for respondent.

(1)    Appellant's first point is that the judgment must be reversed and the defendant discharged because there was a judgment in favor of the defendant Davis, and appellant cities McGinnis v. Railroad, 200 Mo. 347; Storage & Moving Co. v. Transit Co., 120 Mo. App. 410, and a long list of cases, but it will not be necessary to notice the others, as they are all practically upon the same point. McGinnis v. Railroad has no application or bearing on the present case. In this suit the bank and Davis were not making the same defenses. The bank was claiming that the money belonged to Davis, and that it had paid the same to him; while Davis denied any claim to the fund. In Stilwell v. Hamm, 97 Mo. 587, the court said: ''The several defendants occupy different attitudes toward the subject of the action, and such relief is asked and may be given against each as his position warrants.'' The petition alleged: ''The said defendant Davis is now claiming said fund so in said bank.'' Davis filed a general denial and thus denied that he was claiming the fund. Gilchrist v. Bryant, 213 Mo. 442. A judgment in favor of Davis did not necessarily mean one in favor of the bank. If Davis was making no claim to the fund he was standing by his contract by which he had agreed that the bank should deliver the $10,000

to the plaintiff. The bank was denying that the escrow paper had been deposited with it, and alleged that the deposit with the cashier was not a deposit with the bank, as the cashier had no authority to represent the bank in the matter. (2) The suit is not against the bank for its failure to accept or for its acceptance of the order. The suit is against the bank for failing to pay over $10,000 which it agreed it would pay to Byrd when the same came into its possession, or when it was received from the Glasses, and the order was only the evidence from Davis of his consent to the arrangement. (3) The petition alleges that the said defendant bank verbally consented to the payment of the said sum of $10,000 in the manner directed and requested by said defendant, Davis, as aforesaid. And further alleges that the money came into the possession of the bank and under its control, and that it failed to pay the same in accordance with its previous agreement.

WOODSON, J.—While much of the testimony in this case was parol, and given by two witnesses for the plaintiff and two for the defendant, nevertheless, there is no dispute between the parties touching the real facts of the case. They are correctly and substantially stated by counsel for the plaintiff in the following language:

"The plaintiff was the owner of a tract of land in Jasper county, Missouri, on which the defendant Davis had been mining for lead and zinc ore, under a mining lease. Davis had been unfortunate in his mining operations and had expended all of his capital and had also failed to comply with the terms of the lease, and the same was subject to forfeiture, and notice thereof had been given. While the matter stood in this situation, Davis applied to the plaintiff for a new lease, and told him that he had expended all his money on the property, and was down and out, and

unless the plaintiff would give him a new lease, he would lose all he had expended in mining on the plaintiff's land; that if plaintiff would give him a new lease, he believed he could sell the same to a Mr. Glass and his sons for $30,000, and out of this purchase money the plaintiff should have $10,000 as a bonus.

"The plaintiff, not being willing to trust the defendant Davis with a delivery of the lease to him so that he could dispose of it, agreed that he would execute the new lease and deposit the same with the defendant bank, to be delivered when the purchase money was paid, so that he would be protected in the receipt of his $10,000. The plaintiff was a customer of the appellant bank, and before any papers were executed or deposited, visited the bank and explained to the officers what he contemplated doing, and was notified that it would be all right with the bank, and that the latter would carry out the arrangement.

"The new lease was executed, and also a contract between the Glasses and Davis for the purchase of the lease, and a quitclaim deed from Davis to the Glasses for the purpose of assigning the lease to the Glasses, and all were deposited in escrow with the appellant bank; the lease and quitclaim deed to be delivered to the Glasses when the payments were made according to the terms of the contract, and if the Glasses failed to make the payments, then the lease was to be returned to the plaintiff.

"No mention was made in the contract or lease that plaintiff was to have $10,000 out of the funds paid by the Glasses for the lease. This was omitted at the request of Davis, who stated he did not want the Glasses to know how the purchase money was to be divided.

"After the papers had been executed, the Glasses, together with the plaintiff and the defendant Davis, appeared at the bank in accordance with the previous arrangement made with the bank by plaintiff, and

stated that they desired to leave the papers in escrow. At this time the plaintiff had in his possession two orders, executed by Davis in duplicate, directing the bank to pay to the plaintiff out of the money it received from the Glasses, $10,000. These orders were not presented to the bank in the presence of the Glasses but immediately after the Glasses left the bank, the plaintiff and defendant Davis returned to the bank and delivered to the assistant cashier the orders, who wrote upon the copy the following words: 'Original deposited with the Webb City Bank, May 11, 1907. H. L. Rose, assistant cashier,' and returned to plaintiff the copy on which he had so written, but kept the other and deposited it with the escrow papers.

"Some time after the bank closed, but on the same day, the plaintiff appeared at the bank with Mr. Robertson, his attorney, and asked the cashier to write the written acceptance of the bank on the order. The cashier refused to do this, and gave as his reasons that in his judgment it would unconditionally bind the bank to pay the money, whether it ever received it or not, but agreed and stated verbally, that the bank would accept the arrangement, and would pay the $10,000 out according to the order, unless some controversy arose, and in which event, the bank would pay the money into court. The plaintiff was satisfied with this agreement with the bank, and the matter thus stood, so far as plaintiff was concerned, until the 3rd day of July, 1907, when the plaintiff heard, through his attorney, that the lease and quitclaim deed had been delivered. The plaintiff lived in Webb City, where the bank was located, and was a customer of the bank, and yet no notice was given to plaintiff that the lease and quitclaim deed had been delivered, or that the money had been paid into the bank, according to the escrow agreement. On the 28th day of June, 1907, Davis, after the lease and deed had been delivered, notified the bank not to pay the plain-

tiff his part of the purchase price. Upon hearing that the bank had delivered his mining lease, the plaintiff appeared and saw the cashier of the bank, who notified him that Davis was claiming the money, but the bank was holding it, and that the plaintiff must commence the suit that day or it would be paid over to Davis. In response to this statement and request of the bank, this suit was instituted, and the defendant bank served with summons before the close of banking hours that day.

"After the suit had been commenced, and on the 5th day of July, 1907, the bank honored the check of Davis for the $10,000, payable to H. W. Currey, the bank's regular attorney, who immediately indorsed the check to Samuel McReynolds, the bank's special attorney in this case, and who was employed at the request of Mr. Currey, but the bank never parted with the money, but admitted at the trial that it still held it under its control, notwithstanding in its answer it had set up that it had paid it out on the check of Mr. Davis.

"There was no claim at the trial that the money belonged to anyone but the plaintiff. In other words, the Glasses did not claim it, and Davis, by answer, denied any claim to it, and the only reason the bank gave for not paying it to Byrd was that it had already paid it to Davis, but which claim was abandoned before the trial was over, and thus leaving the plaintiff, not only entitled to the fund, according to all the evidence, but no one disputing his title thereto, and yet, this case is in this court on appeal."

Upon this state of facts the case was submitted to the jury, which found for the defendant Davis, and against the defendant bank, in favor of the plaintiff, for the $10,000 and interest. In due time the defendant bank filed its motions for a new trial and in arrest of judgment, which were by the court overruled.

Exceptions were saved and in proper form said defendant appealed the cause to this court.

I.   There are many errors assigned by counsel for appellant, but in the view we take of the case, there are but one or two of them which are  necessary to be considered.

It is first insisted by counsel that ''Davis being the immediate actor, and the defendant bank's liability and plaintiff's right of action, if any, against it, being dependent upon the obligations, conducts, contracts and agreements of Davis with plaintiff; and the issues between him and Byrd, as to such obligations, conducts, contracts and agreements, having been found in favor of Davis, and against plaintiff, such finding and judgment bars the plaintiff's right to any judgment against the defendant bank.''

In support of this insistence we are cited to numerous authorities from this and other States, among which is McGinnis v. Railroad, 200 Mo. 347, l. c. 359-361.   In that case the plaintiff sued defendants for injuries sustained by him through the alleged negligence of both the railway company and the employee thereof whose misfeasance caused the injury.   A trial was had which resulted in a verdict and judgment for the plaintiff and against the defendant company, and in favor of the defendant employee and against the plaintiff.   Upon those facts the court held, and properly so, that there could be no liability on the part of the company when the employee whom it was alleged negligently caused the injury was in fact guilty of no negligence.   Conceding without deciding the question, that the rule there announced would ordinarily apply to cases of this character, nevertheless it has no application to this one, for the reason that the finding of the jury evidently was not in favor of Davis and against the respondent, because the contracts and agreements between him and Byrd had never been en-

tered into, for they were in writing and were conceded by all parties, but for the reason that at the trial he made no claim whatever to the $10,000 deposited in the bank, by his answer or otherwise; and upon that state of the case he asked a demurrer to the evidence, in so far as it related to him, which was by the court given.

We therefore rule this insistence against the appellant.

II.    The only other question presented by counsel for appellant for determination is the bank's liability to respondent for the $10,000 deposited with it under the escrow agreement previously mentioned, after having expressly refused to accept in writing the trust proposed to be entrusted to it.

If that refusal had been all there was in this case, then clearly the bank would not be liable, but that is not all.    Notwithstanding said refusal to accept the trust in writing, nevertheless it did so by parol, and actually received the lease, contracts and money mentioned in the contracts and agreements of escrow and performed all the duties of the trust except it refused to pay respondent the $10,000 that was due him under said contracts and agreements.

The bank having orally accepted the trust, and thereby having induced the parties to act upon the faith thereof, and having performed the trust as to one of the parties, it should not now be heard to state that it refused to accept in writing the performance of the duties mentioned in the escrow contract and consequently to say that it is not liable.

We are of the opinion that the case was well tried and that the judgment was for the right parties and should be affirmed.    It is so ordered.    All concur.