## THOMAS MALLEY v. WILLIAM QUINN AND OTHERS.[1]

February 4, 1916.

Nos. 19,564—(207).

**Cancelation of deed — undue influence — performance of modified contract.**
The owner of a farm executed a deed thereof to respondent, his nephew, and placed the same with a depositary in escrow to be delivered to the grantee upon her death, and upon his performance of the conditions of

[1] Reported in 156 N. W. 263.

a contract entered into between them, in which, among other things, it was provided that the grantor had the right to cancel the contract, upon giving 60 days' notice in writing, and to have the deed returned, if respondent failed to perform his contract. In this action, brought by the heirs of the grantor after her death, to cancel the deed, which had been delivered to grantee, it is *held:*

(1) The escrow agreement was valid and gave the grantee title upon his performance of the contract. The fact that the grantor had the right to have the contract canceled and the deed returned if the grantee failed to perform the conditions of the contract, was not such a reservation by the grantor of the right to recall or control the deed as affects the validity of the agreement or the title of the grantee.

(2) It was competent to prove a parol modification of the conditions of the contract.

(3) The evidence sustains the finding that there was an agreement to accept a modified or substituted performance of the conditions of the contract in place of a literal performance thereof, that respondent fully performed the contract as modified, and that such performance was accepted by the grantor as full performance of the contract.

(4) The evidence sustains the finding that there was no undue influence, and that the grantor was of sound mind.

(5) The wife of respondent was a competent witness to testify to conversations with the deceased.

Action in the district court for Hennepin county against William Quinn, Thomas Quinn, Kate McGannon, Mary Wall, Mary M. Hughes and Michael Malley to cancel a deed from Julia Ryan to defendant William Quinn and to decree that plaintiff and the other defendants are owners as tenants in common of the premises conveyed, and for an accounting by defendant William Quinn of the rents and profits. The case was tried before Jelley, J., who when plaintiff rested denied defendants' motion to dismiss the action, made findings and ordered judgment in favor of defendant William Quinn. From the judgment entered pursuant to the order for judgment, plaintiff and defendants other than William Quinn appealed. Affirmed.

*Paul J. Thompson, M. A. Hessian* and *Roberts & Strong,* for appellants. *Pilgram & Pulliam,* for respondent.

Bunn, J.

Julia Ryan, a widow without children, owned and lived upon a farm in Hennepin county. In 1901 she requested a priest to write her brother in Ireland to have one of her nephews come and make his home with her. This letter was written, and in response William Quinn, a son of her brother, came from Ireland in 1901, and established his home with his aunt upon the farm, where he has ever since resided. October 18, 1905, Mrs. Ryan and her nephew drove from the farm to Minneapolis, some ten miles distant, and called upon the former's attorney, who under her instructions and his own advice, drew a contract which was executed by both Mrs. Ryan and Quinn; by the terms of this contract Mrs. Ryan agreed to execute to Quinn a warranty deed conveying the farm, and to deposit it in escrow with the Minnesota Loan & Trust Company, to be retained by that company and to be delivered to Quinn upon Mrs. Ryan's death and upon his faithful performance of the covenants and agreements contained in the contract. These covenants and agreements were in substance as follows: Quinn agreed to pay Mrs. Ryan $25 per month until her death, beginning with April, 1906; to furnish all the labor necessary to erect a two-room cottage on the farm, Mrs. Ryan to furnish the materials; to furnish her during her lifetime all the fresh milk she should need; stated amounts each year of certain vegetables, and all the fuel she should need. Quinn was to have possession of the farm during Mrs. Ryan's lifetime, and the use and profits thereof. He was to keep the premises in good repair and cultivation; Mrs. Ryan was to have possession of that part of the premises on which the cottage to be built was situated. Quinn was to pay all taxes and assessments, and agreed to take his aunt to church at least once every Sunday while she was able to go. In case of Quinn's default in the performance of any of his covenants or agreements, it was provided that Mrs. Ryan might at her option by a 60 days' notice in writing declare the contract canceled.

The deed was executed by Mrs. Ryan and deposited in escrow as provided in the contract on October 18. Mrs. Ryan delivered possession of the premises to Quinn, and he has remained in possession ever since. Mrs. Ryan died August 22, 1913. On August 27 upon an affidavit of Quinn, stating that the conditions of the escrow agreement had been fully

complied with on his part, the Minnesota Loan & Trust Company delivered the deed to him and it was recorded on the same day.

Plaintiff in this action is a nephew of Mrs. Ryan, and the defendants are her nephews and nieces. She had no other heirs. The complaint charged that defendant William Quinn did not perform his part of the contract with Mrs. Ryan, alleging nonperformance in many details, and that he obtained the deed from the trust company by falsely and fraudulently representing that he had fully complied with the terms of the escrow agreement and of the agreement with Mrs. Ryan. It was also charged that the contract and deed were not the free acts of Mrs. Ryan, but were the result of undue influence, threats and violence, on the part of defendant Quinn. The relief asked was that the deed be canceled and annulled, that plaintiff and defendants be decreed to be the owners of the farm as tenants in common, and that defendant Quinn account to plaintiff for the rents and profits since the death of Mrs. Ryan. The answer of defendant William Quinn contained a general denial and set out the contract in full; alleged a subsequent oral modification of it in respect to the conditions to be performed by defendant, and a full performance by him of these conditions to the complete satisfaction of Mrs. Ryan; that she accepted what was done by defendant as a full performance of the contract, and at no time gave any notice of her intention to cancel it. Judgment was asked declaring defendant William Quinn to be the owner in fee of the farm, free from any claims of plaintiff or of the other defendants, who had answered the complaint, admitting its allegations and asking the same relief.

The trial resulted in a decision in favor of defendant William Quinn. The court found as facts that Mrs. Ryan was of sound and disposing mind when she executed the contract and deed, and gave possession to defendant Quinn, that both instruments were executed voluntarily by her, and that there was no undue influence of any kind or degree. It further found that in May, 1906, Julia Ryan became incapacitated, by reason of an injury, to perform manual labor and care for herself as contemplated by the contract, that defendant William Quinn then constructed the building mentioned in the contract, and furnished Mrs. Ryan until her death with board, necessaries of life, a comfortable home with himself as one of the family, care and attention in sickness, and any help, medical

treatment, church works, visitations from the priest when she was not able to attend church services, all at his own expense, and that Julia Ryan received and accepted all this in full performance of the contract and in place and stead of a literal performance thereof. It was further found that Mrs. Ryan never served a notice of her intention to cancel the contract. Judgment was ordered in favor of defendant William Quinn as demanded in his answer. This judgment was subsequently entered, and plaintiff and defendants other than William Quinn appeal therefrom to this court.

Appellants attack the validity of the escrow agreement; claim that the conditions of the agreement could not be modified by parol; that the evidence was insufficient to show the contract was so modified; that there was undue influence, and generally that a wrong result was reached by the trial court.

1. The point made against the validity of the escrow agreement is that, by reason of the cancelation clause, Mrs. Ryan reserved- the right to recall the deed prior to her death. This is a wrong application of the principle invoked. Mrs. Ryan, when the deed was delivered in escrow, reserved no control over it, no right to recall it. She did reserve a right to cancel the agreement and have the deed returned to her, upon giving 60 days' notice in writing, for default by her nephew in the performance of his agreement. This was no greater right than the law gave her; indeed it was less, as she bound herself to give written notice of her intention. The rule that, in case of a deed placed in escrow to be delivered to the grantee upon the death of the grantor, title does not pass if the grantor reserves the right to recall or control the deed (Dickson v. Miller, 124 Minn. 346, 145 N. W. 112), has no application to an agreement like the one in this case, when the only control is the right that the grantor would have anyway to insist on performance of the agreement by the grantee, a right of control not reserved by the grantor, but given by law. The grant in this case was for a valuable consideration, based upon a contract. The deed was to be delivered to the grantee upon the death of the grantor on condition that he performed the contract. No title could pass to the grantee until he performed the conditions, or at least until performance was waived. The rule invoked does not apply to this case, and the escrow agreement was valid.

2. Respondent did not literally perform his contract; but the evidence is conclusive that such a literal performance would have been worthless to Mrs. Ryan, owing to the change in her physical condition which made it necessary that she live as a member of respondent's household. That under these circumstances it was entirely competent for the parties to agree by parol to a modified or substituted performance, there can be no doubt. A written contract of this kind may be changed or modified by a subsequent parol agreement. Whether we say that literal performance was waived, or apply the doctrine of estoppel, the result is the same. If a substituted performance was agreed upon, or accepted as full performance, there is no rule of law which compels or justifies a decision that there was a forfeiture.

3. In our judgment the evidence amply justified the finding of the trial court that the conditions of the contract were modified by agreement of the parties, that respondent fully performed the conditions as modified, and that Mrs. Ryan accepted what respondent did for her as full and complete performance on his part.

4. We reach the same conclusion on the question of undue influence. The evidence fully justified the court's finding on this issue, and also the finding that Mrs. Ryan was of sound mind.

5. It is suggested, though not strenuously urged, that the wife of respondent was not a competent witness to testify to conversations with Mrs. Ryan, since deceased. This position is untenable. Madson v. Madson, 69 Minn. 37, 71 N. W. 824. See Thill v. Freiermuth, supra, p. 242, 156 N. W. 260.

Our conclusion is that the judgment rendered by the trial court was right.

Judgment affirmed.