NELLIE E. BARR, Appellant, v. WILLIAM D. SNYDER, M. BENTLEY, KANSAS CITY TITLE INSURANCE COMPANY, a Corporation, PAWNEE INVESTMENT, COMPANY, a Corporation, SNYDER REALTY COMPANY, a Corporation, Respondents.—No. 40676.—219 S. W. (2d) 305.

Division Two, April 11, 1949.

*C. W. Prince, Wm Dennis Bush* and *F. Richard Weber* for appellant.

*Harry L. Jacobs* and *Robert J. Coleman* for respondents, William D. Snyder, M. Bentley, Pawnee Investment Company, and Snyder Realty Company.

*Arthur N. Adams* and *Arthur N. Adams, Jr.,* for respondent, Kansas City Title Insurance Company.

[305] BOHLING, C.—Interpleader, the outgrowth of a contract for the sale and purchase of real estate for $13,750. Nellie E. Barr, the purchaser, instituted an action in conversion for $20,000 actual

and $20,000 punitive damages against William D. Snyder, the owner, M. Bentley, the contracting seller, Kansas City Title Insurance Company, a corporation, the escrow agent, Pawnee Investment Company, a corporation, the record title holder and controlled by Snyder, and Snyder Realty Company, a corporation, also controlled by Snyder. The Kansas City Title Insurance Company hereinafter designated Title Company, joined with its answer to Mrs. Barr's action in tort, a bill of interpleader by way of cross-claim or cross-bill. The court sustained this plea and discharged the Title Company. Mrs. Barr appeals, contending that the escrow agent may not maintain a bill of interpleader.

It is stated in behalf of Mrs. Barr that an escrow agent is a trustee for both parties [306] and is bound by the conditions of the deposit;[1] that an equitable interpleader may not successfully be interposed because she has elected to pursue the remedy of an action at law in conversion for damages in lieu of her rights in the escrow;[2] that the defendants to the interplea do not claim the same thing;[3] that the escrow agent incurred an independent personal liability to her;[4] that the escrow agent was not absolutely disinterested;[5] was a wrongdoer;[6] a trespasser liable in tort.[7] This calls for some detail of the facts.

A certain six-apartment building in Kansas City, Missouri, was listed by Snyder for sale with Triplett Bros. real estate agency. Mrs. Nellie E. Barr of Denver, Colorado, was in the market for Kansas City real estate. The parties met in Triplett's office. Mrs. Barr was informed and understood that Snyder controlled and had full authority to sell the property. After some negotiating, they agreed

[1]Morris v. Davis, 334 Mo. 411, 66 S. W. 2d 883, 888; Byrd v. Webb City Bk., 245 Mo. 277, 149 S. W. 31 32[2]; 30 C. J. S. 1203, Sec. 8; 19 Am. Jur. 435, Sec. 17; 95 A. L. R. 293.

[2]Rauch v. Ft. Dearborn Nat. Bk., 223 Ill. 507, 79 N. E. 273, 275; City of St. Charles v. Wabash Ry. Co. (Mo. App.), 65 S. W. 2d 655, 658[1]; Long v. Long, 141 Mo. 352, 353, 366, 44 S. W. 341, 345[1]; 28 C. J. S. 1060 1061, Sec. 2; 4 Sutherland, Damages (4th Ed.), 4301, Sec. 1140. Consult Marshall & Michael Grain Co. v. Kansas City, Ft. S. & M. Rd. Co., 176 Mo. 480, 75 S. W. 638; Pantz v. Nelson, 234 Mo. App. 1043, 135 S. W. 2d 397, 402[4, 9, 10].

[3]Metropolitan L. Ins. Co. v. Brown (Mo. App.), 186 S. W. 1155, 1157; Andrews v. Travelers Ins. Co., 145 Ga. 472, 89 S. E. 522[2]; 30 Am. Jur. 219, Sec. 8.

[4]W. A. Ross Cons. Co. v. Chiles, 344 Mo. 1084, 130 S. W. 2d 524, 528[5]; Hartsook v. Chrissman, 114 Mo. App. 558, 90 S. W. 116; Klaber v. Maryland Cas. Co., 69 F. 2d 934, 937[5]; 4 Pomeroy, Equity Jurisprudence (5th Ed.), 913, Sec. 1326.

[5]Bell Storage Co. v. Harrison, 164 Va. 278, 180 S. E. 320, 322[3, 4]; 30 Am. Jur. 220, Sec. 10.

[6]30 Am. Jur. 233, Sec. 13; 91 Am. St. Rep. 605.

[7]Sewanee Fuel Co. v. Leonard, 139 Tenn. 648, 202 S. W. 928; Stephenson & Conn v. Burdett, 56 W. Va. 109, 48 S. E. 846, 849, 850.

upon a price of $13,750 and a contract was signed by Mrs. Barr. Triplett took the contract to Snyder's office and returned with the signature of "M. Bentley" on it. Mrs. Barr learned that M. Bentley was Snyder's secretary and thereafter that her deed would be executed by the Pawnee Investment Company. She testified she wanted the deed to the property, from the Pawnee Investment Company or anybody.

The contract dated February 21, 1945, between M. Bentley, as "seller," and Mrs. R. C. [Nellie E.] Barr, as "buyer," so far as material here, called for the payment of said $13,750 as follows: $500 cash, receipt being acknowledged and deposited with Triplett Bros.; $3,000 payable on delivery of the deed, subject to a $9,000 4-1/2% note, secured by a first deed of trust on the real estate; and subject also to a $1,250 5% note of the buyer, secured by a second deed of trust. The seller was to receive the rentals until the delivery of the deed. The contract contained provisions respecting the delivery of an abstract of title to Triplett Bros., its examination, correction of any defects within thirty days et cetera. The seller could furnish a title insurance policy. Triplett Bros. were the only persons charged with any duties under the contract aside from the contracting parties.

The contract also explicitly provided: "It is further agreed that the buyer is to receive all furniture and equipment belonging to the seller."

Two of the apartments had been rented furnished. Snyder telephoned to Triplett before Mrs. Barr left Triplett's office to know if she would accept $250 for the furniture in- one of the apartments, stating a friend had rented the apartment unfurnished, and apologized for having overlooked this.

James F. Triplett, the sales agent, testified on behalf of Mrs. Barr to the effect that a Mrs. Beckett came to his office to rent the apartment unfurnished; that witness informed Mrs. Beckett he understood the apartment had been rented; that she [307] had him telephone to Snyder; that Snyder told him Mrs. Beckett could have the apartment; and in the same conversation said that "he had sold the furniture"; that witness gave Mrs. Beckett a receipt for $45 as rent on the apartment for the month of March, 1945, at Snyder's direction, and that Mrs. Beckett gave him $100 about three days later for putting her in possession. The $45 rent receipt is dated February 23, 1945, two days later than the contract of sale.

The bill of sale for the furniture, signed "Snyder Realty Company" is dated February 28, 1945, and recites a consideration of $450. Triplett was of opinion the furniture had been sold prior to February 28, testifying they do not usually execute the papers for a day or two.

Mrs. Barr testified she sent Mrs. Beckett to Triplett; that Triplett informed her Snyder kept calling about selling the furniture and acting peculiarly about the transaction; that she talked with Snyder; that Synder wanted an additional $500 and if this were not agreeable, asked to sell the furniture and apply it on the $1,250 note, or call off the sale; that she also saw Snyder about a week later and he told her he would give her "just one hour to sell that furniture" or let him sell it and rent the apartment as he was losing approximately $1.90 a day; that she went to Triplett's office; that Triplett did not like Snyder's actions and wanted "to wash" his hands of the whole matter, and see if they could not leave the papers and money with the Title Company for closing.

Triplett testified it was agreeable to Mrs. Barr and Snyder for the Title Company to take over the closing of the transaction. So, on February 28, 1945, Mrs. Barr and Snyder took the transaction up with Frank D. McMullen of the Title Company, gave him the contract, explained to him the controversy respecting the furniture, and told him, according to Mrs. Barr, "we will have that settled and taken care of in some way."

The Pawnee Investment Company made an application for a $9,000 loan prior to February 21, 1945, and in compliance therewith executed its note, secured by a mortgage on the apartment building, sometime in March, 1945.

The Title Company received from Mrs. Barr the $3,000 cash balance and gave its receipt therefor dated March 1, 1945; a deed from "Pawnee Investment Company, W. D. Snyder, President, M. Bentley, Secretary" to Mrs. Barr, dated March 2, 1945, with acknowledgment of even date; Mrs. Barr's $1,250 note and deed of trust, dated March 2, 1945, with the deed of trust showing acknowledgment on March 22, 1945; and a check from Snyder payable to Mrs. Barr dated April 2, 1945, for $450 to cover the sale of the furniture. This check carries Mrs. Barr's endorsement in full settlement of the contract; but she instructed the Title Company to hold the check and not put it in escrow.

The Title Company was to issue its "Owner's Policy of Title Insurance" on the premises. The New York Life Insurance Company held a $6,000 note secured by a mortgage on the property and a chattel mortgage on the furniture. A release of the $6,000 mortgage was filed of record March 26, 1945. However, the release of the furniture from the chattel mortgage, was delayed, it not being released until May 31, 1945, five days after the filing of plaintiff's petition on May 26, 1945.

Mrs. Barr wanted to close the contract of sale, accept delivery of the deed and leave the furniture controversy open for subsequent adjustment. In a letter dated April 12, 1945, her attorney, Mr.

Field, valued the furniture at $1,000, and, with some additional claims, a total demand of $1,840 was made against Snyder.

Snyder was willing that the transaction be closed but insisted that any closing dispose of all controversies, including that relating to the furniture.

The Title Company endeavored to close the deal. A letter, dated April 2, 1945, embodying Mrs. Barr's ideas was prepared and, after she signed it, submitted to Snyder for approval. Snyder refused to approve. This was followed on April 6, 1945, by the preparation of a letter embodying Snyder's ideas for closing the transaction, but Mrs. Barr refused to approve it.

■ [308] Section 18 of the Civil Code of Missouri · (Laws 1943, p. 361; Mo. R. S. A., § 847.18), material here, reads:

"Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. . . ."

Section 18 is taken from Rule 22(1) of the Federal Rules for Civil Procedure. See 28 U. S. C. A. p. 522, following § 723c. It extends the scope of bills of interpleader and bills in the nature of a bill of interpleader. John A. Moore & Co. v. McConkey (Mo. App.), 203 S. W. 2d 512; Standard Surety & Cas. Co. v. Baker, 105 F. 2d 578; 1 Carr, Missouri Civil Procedure, 162, § 67; 2 Edmunds, Federal Rules of Civil Procedure (1938), 913 et seq.; 7 Mo. L. R. 222; 5 Mo. L. R. 10. The office of the equitable interplea is not to protect a party against a double liability, but against double vexation in respect to one liability. As we read the instant record, it is not necessary to develop the enlargement of the equitable interplea by § 18.

The filing of the interplea under our former procedure invoked the jurisdiction of equity to determine the propriety of the action, and if not properly instituted under the facts, the plea would fail, as shown in cases cited by Mrs. Barr. W. A. Ross Cons. Co. v. Chiles, 344 Mo. 1084, 130 S. W. 2d 524, 528; Hartsook & Home v. Chrissman, 114 Mo. App. 558, 90 S. W. 116; Metropolitan L. Ins. Co. v. Brown (Mo. App.), 186 S. W. 1155, 1157.

■ The filing of the instant interplea is within the authorization of § 18. Although unusual, equity may inquire into facts involving the merits insofar as essential to a determination of the propriety of its jurisdiction. For instance, if the right to maintain the interplea turn on a dispute of fact, the court may ascertain whether such

dispute is real and substantial or merely feigned and colorable. 48 C. J. S. 94, § 42, n 92; 33 C. J. 461, n 52. The converse also has been held: Where the asserted claim of the third person is frivolous or invalid, colorable, the interplea should be denied. 48 C. J. S. 51, § 14 c, n 59; United Rys. Co. v. O'Connor, 153 Mo. App. 128, 132 S. W. 262; Cross v. Wyoming Valley Beef Co., 57 Pa. Super. 351. By way of analogy, see Harrison v. Chamberlin, 271 U. S. 191, 194, 195, 70 L. Ed. 897, 46 S. Ct. 467, stating: "And . . . a claim is merely colorable if 'on its face made in bad faith and without any legal justification' "; Louisville Trs. Co. v. Comingor, 184 U. S. 18, 26, 46 L. Ed. 413, 22 S. Ct. 293.

In Novinger Bank v. St. Louis Union Trs. Co., 196 Mo. App. 335, 189 S. W. 826, 829, a bondholder sued for his distributive share of a foreclosure proceeding, charging that the trustee had received more than he actually received. Other bondholders disputed the validity of all but one of plaintiff's bonds. The trustee filed an answer and bill of interpleader, alleging the petition charged receipt of the additional sum to feign a dispute to defeat an interplea. In holding a mere colorable dispute ineffective to oust equity of its rightful jurisdiction, the court, among other things, said:

". . . If the circumstances are such that the prayer of the bill of interpleader should be granted except on account of a dispute as to a fact governing and determining whether such right should be granted, then the court should ascertain whether such dispute is real or feigned. Otherwise, the court would have no means of ascertaining whether its equity powers should be exercised or not. We are of the opinion that under circumstances like the present, . . . the court should investigate the facts far enough to ascertain whether such claim was made in good faith or not, or had a reasonable foundation for its basis."

[309] The Title Company was entitled to the interplea under the above authorities. Mrs. Barr's presentation proceeds upon the theory the written contract of February 21, 1945, covered the rights and duties of all parties. Such might have been the situation had Triplett Bros. remained escrow agent. The controversy respecting the furniture had become so intense that Triplett Bros., the escrow agent named in said contract, wanted to "wash" their hands of the escrow before the Title Company had any information of the situation. The Title Company accepted the escrow a week after the execution of the written contract with the understanding the then existing controversy between the parties respecting the furniture would be settled and taken care of in some way. Byrd v. Webb City Bk., 245 Mo. 277, 286, 149 S. W. 31, 32(2); Foulkes v. Sengstacken, 83 Ore. 118, 158 P. 952, 163 P. 311, 315[16-18]; Malley v. Quinn, 132 Minn. 254, 156 N. W. 263, 264[2]. It has never been settled but continues as it existed when the papers were placed with the Title Company. It

was not for the Title Company to determine the rights of Mrs. Barr and Snyder. In the circumstances it would have acted at its peril with either party without the consent of the other. Citizens Nat. Bk. v. Davisson, 229 U. S. 212, 225, 57 L. Ed. 1153, 33 S. Ct. 625; Morris v. Davis, 334 Mo. 411, 66 S. W. 2d 883, 888. Snyder's forbidding, whether rightfully or wrongfully, the completion of the escrow in conformity with the desires of Mrs. Barr was sufficient ground for the Title Company to invoke interpleader. Smith v. Grand Lodge A. O. U. W., 124 Mo. App. 181, 201, 101 S. W. 662, 669; John A. Moore & Co. v. McConkey (Mo. App.), 203 S. W. 2d 512, 515; 48 C. J. S. 53, § 14; 33 C. J. 433, § 17. Mrs. Barr may have rights against Snyder but they do not authorize her to disregard the conditions under which the escrow was accepted by the Title Company. The Title Company was not a party to the dispute respecting the furniture. Its efforts were directed to an adjustment of the controversy that it might close the transaction. It was unsuccessful in this and it has deposited in court all of the escrow received by it as a stakeholder from Triplett Bros., Mrs. Barr, Snyder, or any other interested party. Williams v. Simon (Tex. Civ. App.), 235 S. W. 257, 262[12]; Stinson v. 6-8 W. Fifty-Seventh St. Corp., 215 N. Y. S. 252, 253[4], 127 Misc. 69. The equity here is that Mrs. Barr and Snyder litigate the furniture controversy without involving the Title Company in that dispute.

Mrs. Barr's brief mentions the "pretense that M. Bentley was the owner and seller" of the apartment building. If so, there is nothing in the record upon which Mrs. Barr may charge the Title Company of any wrong in "M. Bentley" signing the contract a week prior to the Title Company's knowledge of its existence.

Courts "in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, . . . or of any separate issue or any number of claims, cross-claims, . . . or issues." Laws 1943, p. 384, § 97 (b); Mo. R. S. A., § 847.97 (b). See our Rule 3.29. The court appropriately took up the interplea first.

What we have said rules the points presented in behalf of Mrs. Barr on this appeal. We have considered her authorities, a number being cited in notes 1-7, supra. Some of her authorities, as we view the suit, state principles of law not questioned here and others, under the peculiar facts of the instant case, are not controlling. We think this is true without regard to the extent § 18 of the Civil Code (quoted supra) may enlarge the equitable bill of interpleader.

The judgment allowing the Title Company to maintain its bill of interpleader should be and is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.