Nellie E. BARR, Appellant,

v.

William D. SNYDER, M. Bentley, Pawnee Investment Co., a corporation, and Snyder Realty Co., a corporation, Respondents.

No. 44758.

Supreme Court of Missouri.

Division No. 2.

Sept. 10, 1956.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 8, 1956.

Clarence C. Chilcott, Walter A. Raymond, Kansas City, for appellant.

Harry L. Jacobs, Robert J. Coleman, Paul Barnett, Kansas City, for respondents.

STOCKARD, Commissioner.

This is a suit by the purchaser for specific performance of a contract for the sale of real estate. From an adverse judgment plaintiff has appealed. Title to real estate within the meaning of Constitution of Missouri 1945, Article V, § 3, V.A.M.S. is involved and jurisdiction is in this court. Drake v. Hicks, Mo.Sup., 249 S.W.2d 358 [1].

On February 21, 1945, Maxine Bentley entered into a contract to sell a certain apartment building in Kansas City, Missouri, to Mrs. R. C. [Nellie E.] Barr. Miss Bentley was the secretary of William D. Snyder, a real estate dealer, who intended to have the title placed in her name as a straw party. It is admitted that Snyder was the owner of the property and the actual contracting party. At the time of the trial Snyder had caused the title to be

transferred to the Pawnee Investment Company, a corporation controlled by him. The contract price for the property was $13,750 to be paid by the buyer as follows: $500 cash to be deposited with James Triplett as escrow agent; $3,000 in cash payable on delivery of the deed; the assumption by plaintiff of a $9,000 note at four and one-half percent interest secured by a first deed of trust on the property; and a note by the buyer in the amount of $1,250 at five percent interest secured by a second deed of trust on the property. The contract also provided: "It is further agreed that the buyer is to receive all furniture and equipment belonging to the seller." Of the six apartments in the building only two were furnished.

Plaintiff testified that shortly after the contract was signed Snyder told her that he forgot to mention that he had rented one of the furnished apartments (apparently then vacant) to a friend of his who wanted the apartment unfurnished, and that he had intended to sell the furniture in that apartment for $250. Snyder asked plaintiff if she would agree for him to go ahead with this plan and she said "positively not." This particular conversation was denied by Snyder. On the next day, February 22, 1945, plaintiff answered an advertisement in a Kansas City newspaper wherein a Mrs. Beckett offered a reward of $100 to any one who would find her an apartment. Plaintiff told Mrs. Beckett that she had contracted to buy an apartment building in which there was an apartment that could be rented either furnished or unfurnished. Mrs. Beckett, as the result of plaintiff's call to her, looked at the apartment, and pursuant to instructions from plaintiff, went to James Triplett who accepted a check from Mrs. Beckett for one month's rent of the apartment at the unfurnished rate.

Two or three days after the contract was signed, plaintiff and Triplett went to Snyder's office, and according to plaintiff, Snyder wanted her to consent that he sell the furniture and credit the proceeds against the note for $1,250, but she refused

and said she did not want the furniture sold "at any price or under any circumstances." As a reason for this position plaintiff testified that the furniture increased the rent $10.00 per month over the unfurnished rate. However, at that time she had already arranged through Triplett to rent the apartment to Mrs. Beckett at the unfurnished rate. It was admitted that plaintiff and Snyder engaged in a bitter and extended argument over whether Snyder's friend or Mrs. Beckett should be permitted to rent the apartment. Snyder finally gave up his demand in behalf of his friend because, according to him, plaintiff had already accepted a check from Mrs. Beckett for the rent. Mrs. Beckett moved into the apartment on March 1, and a few days later, over his protests (according to Triplett), Mrs. Beckett paid Triplett $100 in cash.

On February 28 Snyder caused the furniture in the apartment rented by Mrs. Beckett to be sold for $450. The testimony is in direct conflict as to whether plaintiff agreed to this. Plaintiff testified that she never asked nor agreed that Snyder sell the furniture. However, plaintiff admitted that after the furniture was sold she and Snyder discussed how the proceeds should be allocated, and this apparently was the subject of another bitter argument.

Snyder testified that after he and plaintiff had the argument over to whom the apartment was to be rented and he had consented that the apartment be rented to Mrs. Beckett, plaintiff told him to sell the furniture so that her tenant could move in by March 1. Mr. Clark Gideon, Snyder's agent who handled the sale of the furniture, testified that plaintiff "agreed" that the furniture should be sold for the "best dollar Snyder could get," and that plaintiff told Snyder to "sell the furniture and get all you can for it." If the furniture was not to be sold, as plaintiff contends, we cannot determine what plaintiff wanted done with the furniture or how she expected her tenant to move into the apartment on March 1 on an unfurnished basis.

Snyder also testified that immediately after the sale he advised plaintiff that the price received for the furniture was $450. She expressed dissatisfaction with the price received, and said that it should have brought $1,000. However, there was evidence that $450 was the maximum price permissible under price control regulations then in effect. Plaintiff testified that she never demanded any money whatever from Snyder for the furniture, but the record supports the conclusion that this was the principal issue on which the parties could not agree, and notwithstanding plaintiff's denial, on April 12, 1945, her attorney wrote Snyder a letter, with a copy to plaintiff, in which he demanded $1,000 for the furniture sold. Plaintiff explained this letter by saying, "I said I myself never did" demand $1,000 for the furniture.

Triplett delivered the $500 deposited with him and the rent check received from Mrs. Beckett to the Kansas City Title Insurance Company on February 28, and Mr. Frank D. McMullen represented that company thereafter as escrow agent. Plaintiff deposited with the escrow agent the amounts required by the contract, and she executed a note for $1,250 and a second mortgage securing that note and deposited them with the escrow agent. Snyder deposited with the escrow agent a warranty deed from the Pawnee Investment Company to plaintiff and a bill of sale to plaintiff conveying all fixtures and the furniture in the one remaining furnished apartment. Snyder also deposited in escrow a check dated April 2, 1945, in the amount of $450 representing the proceeds received from the sale of the furniture, on the back of which was typed the words "In full settlement of contract dated February 1, [this undoubtedly was meant to be February 21] 1945 between M. Bentley and Mrs. R. C. Barr." The earliest date that Snyder could have transferred clear record title to the plaintiff was March 26, 1945.

Mr. McMullen made several efforts to get the parties in agreement so that the transaction could be closed, but the record is extremely confusing as to exactly what happened. It may be said with certainty only that the transaction was not completed, that the escrow agent displayed commendable patience but ended up being sued by plaintiff, and that this litigation in various stages has now been pending in the courts over eleven years.

Snyder prepared a proposed closing statement, dated March 23, 1945, which prorated the rentals as of that date, made adjustments pertaining to interest, coal on hand in the building and insurance. This closing statement provided that the balance to be paid to Snyder by the escrow agent out of the $3,000 cash deposit was $2,895.34. This statement apparently did not provide for an adjustment of the dispute concerning the sale of the furniture. Plaintiff testified on deposition that "as I looked at it [the closing statement] and went over it I became so thoroughly disgusted I said, 'Mr. McMullen, I won't close on that statement.'" Mr. McMullen testified that plaintiff refused to agree to the statement, but the reasons for the refusal were not stated. However, at the trial plaintiff produced a copy of this statement on which she had written at the bottom in longhand the following: "This closing statement, prepared by W. D. Snyder, as the amount of money required to be paid, to obtain warranty deed, bill of sale for all furniture, insured title, and all essential papers for buyer—Therefore, I request the Kansas City Title and Trust Co. to pay this amount, submitted this date, March 30, 1945. Buyer Nellie E. Barr." Plaintiff testified that she gave a copy of the statement with the written notation in her handwriting thereon to Mr. McMullen, but he denied this and testified that he never saw the notation until it was produced by plaintiff after this suit was filed. There is no contention that plaintiff ever gave a copy of the notation to Snyder.

Snyder wrote a letter dated March 30, in which he offered plaintiff $450 for the furniture "together with the closing of our transaction today" as a complete adjust-

ment of all claims in connection with the contract. Plaintiff refused to accept this. In an effort to get the parties in agreement, Mr. McMullen prepared a letter dated April 2, based on the figures contained in the statement prepared by Snyder, directing the method of closing the transaction. Plaintiff signed this letter but Snyder refused to approve it because the letter expressly provided that the controversy concerning the sale of the furniture was to be left to subsequent adjustment. On April 6, Mr. McMullen prepared another letter substantially the same as the letter of April 2, except that it contained the provision that the acceptance of $450 for the furniture would be a complete settlement of this matter. Plaintiff refused to agree to this proposal. However, at one time, apparently on April 2, plaintiff endorsed the check for $450 for the furniture but on condition, according to her, that the deed to her would be recorded "right away." When Mr. McMullen told her "I can't record it right away but you will get your deed" she instructed him not to cash the check, and she testified that "after that time I turned it over to the attorneys." Although the contract provided that the rents were to be prorated as of the delivery of the deed, plaintiff insisted she was entitled to the rents from March 1, and apparently at some stage of the negotiations Snyder agreed to this.

On May 26, 1945 plaintiff brought suit for damages against Snyder, Maxine Bentley, Kansas City Title Insurance Company, Pawnee Investment Company and Snyder Realty Company. The petition did not seek specific performance of the contract but was in tort for the conversion of the money and note placed in escrow. Plaintiff sought $20,000 actual and $20,000 punitive damages.

By interpleader, Kansas City Title Insurance Company sought to pay all money and property on deposit with it into court and to be discharged. The trial court ordered a separate trial on the interpleader and then entered judgment discharging the title company, and this judgment was affirmed on appeal. Barr v. Snyder, 358 Mo. 1189, 219 S.W.2d 305. In the meantime almost five years had elapsed and the property in question had increased greatly in value. On January 14, 1950, over the objection of the remaining defendants, plaintiff was permitted to file an amended petition in which she abandoned her claim for damages for conversion and sought specific performance of the original contract dated February 21, 1945. In her briefs to this court in the present appeal plaintiff explains the reason for amending her petition as follows: "Her attorney prosecuted that [suit for conversion] diligently until a codefendant obtained an adverse judgment, affirmed on appeal, which made that remedy impracticable. She was forced to change the petition or leave the field of litigation and give up her rights."

█ This is a suit in equity and the appeal brings it to this court for trial *de novo* upon the record. It is our duty to weigh the evidence and reach our own conclusions on the facts, and we are not bound by the findings of the lower court, but we may defer to it in instances where sharply conflicting oral evidence does not greatly preponderate one way or the other. Cleary v. Cleary, Mo.Sup., 273 S.W.2d 340 [11]; Larner-Diener Realty Co. v. Fredman, Mo.Sup., 266 S.W.2d 689 [3]. However, in this case a substantial part of the testimony was taken by deposition, and the trial court was in no better position than we are to judge the credibility of the witnesses so testifying. Proffit v. Houseworth, 360 Mo. 947, 231 S.W.2d 612 [2].

█ After the contract was signed, plaintiff insisted that the apartment be rented to Mrs. Beckett on an unfurnished basis. She therefore knew that something had to be done with the furniture. But she made no arrangements to have the furniture moved or stored and she does not contend that she asked or expected Snyder to do so. She merely took the position at the trial that she did not want the furniture

sold at any price, and she made no explanation whatever as to how she expected the apartment to be available on an unfurnished basis for her tenant on March 1. She admits that the question of selling the furniture was discussed, and Triplett testified that plaintiff and Snyder "both were favorable to selling it." In addition, plaintiff's testimony that she did not want the furniture sold because the unfurnished rate was less than the furnished rate is not at all convincing. She had already solicited Mrs. Beckett as a tenant on an unfurnished basis. On the other hand, the circumstances are in accord with the testimony of Snyder and Gideon that after Snyder and plaintiff agreed that the apartment should be rented unfurnished to Mrs. Beckett, plaintiff then directed that the furniture in the apartment be sold so that Mrs. Beckett could move in by March 1. There are many inconsistencies in the testimony, and many isolated statements can be found that lend support to or detract from the positions of each party. However, from a careful study of the whole record, and after taking into consideration the circumstances leading up to the sale of the furniture, we find as a matter of fact that plaintiff and Snyder did orally agree that Snyder should sell the furniture in this one apartment for as favorable a price as he could get, and that by reason of this agreement the parties intended to amend that part of the written contract pertaining to the transfer of the furniture.

■■ Appellant contends that this oral modification of the contract was without consideration and therefore was void. It is the general rule that a modification of a contract constitutes the making of a new contract, 17 C.J.S., Contracts, § 379, and such new contract must be supported by consideration. Rexite Casting Co. v. Midwest Mower Corp., Mo.App., 267 S.W.2d 327 [4]; 17 C.J.S., Contracts, § 376. Here the subsequent agreement was supported by consideration because it affected the obligations of both parties. The total amount of money to be paid by plaintiff and the total amount of furniture to be delivered by Snyder were reduced. We have read the cases cited by plaintiff in support of her position, and all but two announce the general proposition, with which we agree, that where one promises additional or different compensation to another if he will do that which he is already obligated to do, the promise is without consideration and is unenforceable. These cases are not in point. Plaintiff cites Deu Friend v. McDermott, Mo.App., 251 S.W.2d 339, and quotes a statement therefrom to the effect that a contract for the purchase of real estate is not wholly executory when the purchaser has paid earnest money. That statement was made in connection with another statement that if the contract had been wholly executory the parties could have set it aside by mutual agreement without consideration. However, it was held that since the contract was not wholly executory, consideration was necessary to rescind the contract by oral agreement, and in that case the consideration was found to exist. The same principle is announced in Jose v. Aufderheide, 222 Mo.App. 524, 293 S.W. 476, the remaining case cited.

■ The law has been well established that where a contract has not been fully performed at the time of the new agreement, as in this case, the substitution of a new provision, resulting in a modification of the obligations on both sides, for a provision in the old contract still unperformed is sufficient consideration for the new contract. State ex rel. Presnell v. Cox, Mo. Sup., 250 S.W. 374 [3]; Avellone v. John Weisert Tobacco Co., Mo.App., 213 S.W. 2d 222 [6]; Denton v. Mitchell, Mo.App., 262 S.W.2d 639 [6]; Rexite Casting Co. v. Midwest Mower Corp., Mo.App., supra [1]. This is the rule applicable to this case.

Plaintiff next contends that even if the parties did agree orally to modify the written contract, the modification is unenforceable because it is in violation of the statute of frauds. Restated, plaintiff con-

tends that by reason of the statute of frauds Snyder is not entitled to set up the oral modification of the contract as a defense to plaintiff's suit for specific performance.

As a general rule a contract which by reason of the statute of frauds (see Section 432.010 RSMo 1949, V.A.M.S.) must be in writing and has been put in writing, cannot subsequently be modified by oral agreement. John T. Brown, Inc., v. Weber Implement & Automobile Co., Mo. Sup., 260 S.W.2d 751 [1]; Miller v. Arnold, Mo.App., 51 S.W.2d 124 [1]. However, the statute of frauds is an affirmative defense which must be interposed by the party claiming its benefit, State ex rel. Place v. Bland, 353 Mo. 639, 183 S.W.2d 878 [8], and the statute does not render a contract void, but relates only to the remedy. Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054 [7]; Major v. St. Louis Union Trust Co., Mo.App., 64 S.W.2d 296 [1]; Feldman v. Levinson, Mo.App., 93 S.W.2d 31 [11]. The rule has always been that the operation of the statute of frauds can be waived. Schultz v. Hunter, 188 Mo.App. 520, 174 S.W. 179; Major v. St. Louis Union Trust Co., supra; Ott v. Stone, 225 Mo.App. 132, 29 S.W.2d 726. Here Snyder alleged in what he denominated an "Answer and Counterclaim" the modification of the original written contract by the subsequent oral agreement. Snyder also alleged other matters that constituted affirmative defenses and which would have supported his request to have the agreements canceled and the parties restored to their positions before the original contract was signed. Plaintiff did not file a reply. We do not need to determine if she should have done so pursuant to Section 509.010 RSMo 1949, V.A.M.S., but we shall consider the pleadings as though no reply was required. In such case all the averments in the answer are taken as denied or avoided. Section 509.100 RSMo 1949, V.A.M.S. In this situation it has repeatedly been held that in order to obtain the benefit of the statute of frauds it is necessary to direct the trial court's attention to the statute by objection to the introduction of evidence, or possibly by requested instructions in a jury case. Ott v. Stone, supra [5]; State ex rel. Place v. Bland, supra [8]; Heath v. Beck, Mo.App., 231 S.W. 657 [5]. Here the greater portion of the transcript is devoted to the issue of whether a parol contract was entered into in respect to the furniture, but no objection to the admission of the evidence on the basis of the statute of frauds was ever made. "When the statute [of frauds] is sought to be invoked by objection to the introduction of evidence, such objection must be on the grounds of the statute." Ott v. Stone, supra, 225 Mo. App. 132, 29 S.W.2d 729 [7]. Both parties introduced evidence without objection on the issue of whether there was an oral agreement, the issues thus made by the pleadings and the evidence were submitted to the trial court, and no declaration of law on the effect of the statute of frauds was requested. No mention of the statute of frauds was made in the motion for new trial, and the issue is first raised in plaintiff's brief to this court. For the effect of this, see State ex rel. Place v. Bland, supra [9]. Assuming, but not deciding, that the statute of frauds would have prevented proof of the oral agreement if the issue had been timely and properly raised, it is perfectly clear that the limitations of the statute were waived by plaintiff.

There is nothing to indicate that the amount received for the furniture was unreasonably low or that Snyder or Gideon did anything which resulted in less than the actual value of the furniture being received. Although plaintiff's estimate of the value of the furniture was much higher than the price received, that price apparently was the maximum legally permissible, at least as far as is shown by the evidence.

We have here the situation where Snyder offered to perform fully the terms of the contract, as amended, but

plaintiff refused to do so unless she received a sum of money for the furniture in excess of the sale price thereof to which she was not entitled under the terms of the amended agreement. The party who seeks relief in the form of specific performance must show his performance or offer of performance of every essential obligation resting upon him before the other party may be compelled to perform. Drake v. Hicks, Mo.Sup., 249 S.W.2d 358 [4]. Plaintiff has consistently refused to perform unless she received benefits to which she was not entitled, and, under these circumstances, she is not entitled to obtain specific performance of the original contract, which is what she requests, with damages for the alleged breach by Snyder, and she has refused to perform the contract as amended. Therefore, the trial court correctly denied her the relief sought.

We have ruled this case solely on the merits of the amended petition and the evidence in support of and in opposition thereto. We express no opinion and do not rule on the right of plaintiff to amend her petition to seek specific performance (if our findings on the question of the oral contract pertaining to the furniture had been otherwise) after she pursued the suit for conversion for almost five years and after she received an adverse judgment as to one codefendant which plaintiff admits made further efforts in her action in tort against the present defendants "impracticable."

The judgment of the trial court is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.